THOMAS J. MOLONEY (*Pro Hac Vice* Application Submitted)
DAVID E. BRODSKY (*Pro Hac Vice* Application Submitted)
MARLA DECKER (Admitted *Pro Hac Vice*)
JUSTIN L. ORMAND (Admitted *Pro Hac Vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza, New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
E-mail: tmoloney@cgsh.com
E-mail: dbrodsky@cgsh.com
E-mail: mdecker@cgsh.com
E-mail: jormand@cgsh.com

JONATHAN A. PATCHEN (SBN 237346)
JOSHUA R. BENSON (SBN 269111)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
E-mail: jpatchen@tcolaw.com
E-mail: jbenson@tcolaw.com

Attorneys for Defendant
HSBC BANK USA, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAILEA PARTNERS, LP, a Delaware limited partnership,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HSBC BANK USA, N.A., a national banking association,<br><br>　　　　Defendant. | Case No.: CV-11-3544 (SC)<br><br>**DEFENDANT HSBC BANK USA, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:　　December 9, 2011<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 1, 17th Floor<br><br>Honorable Samuel Conti |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED ............................................... 1

I.   PRELIMINARY STATEMENT ......................................................... 2

II.  BACKGROUND ............................................................................... 4

III. ARGUMENT ................................................................................... 5

    A.   WAILEA'S CLAIMS ARE GOVERNED BY NEW YORK LAW ............ 5

    B.   SENATOR'S INVESTMENT STRATEGY WAS NOT A
        CONTRACTUAL CONDITION ..................................................... 6

    C.   WAILEA ASSUMED THE RISK OF MISTAKE AS TO ITS SYNTHETIC
        INVESTMENT IN SENATOR AND ITS CLAIMS FOR BOTH MUTUAL
        AND UNILATERAL MISTAKE MUST BE DISMISSED ....................... 9

        1.   The Swap Agreement Makes Clear That Wailea Bears The Risk Of
            Mistake ................................................................................. 9

        2.   Even Without The Swap Agreement's Clear Allocation Of Risk,
            Wailea Assumed The Risk Of Mistake ................................. 12

        3.   Wailea Bears The Risk Of Mistake As A Matter Of Law ................... 13

    D.   WAILEA'S INNOCENT MISREPRESENTATION CLAIM FAILS
        BECAUSE IT CANNOT PROVE RELIANCE ON ANY STATEMENTS
        BY HSBC ................................................................................. 14

    E.   EVEN IF THE SWAP AGREEMENT DID NOT ALLOCATE THE RISK
        OF MISTAKE TO WAILEA, WAILEA'S UNILATERAL MISTAKE
        CLAIM FAILS FOR THE ADDITIONAL REASONS THAT IT HAD NO
        DUTY TO DISCLOSE AND WAILEA FAILED TO ADEQUATELY
        ALLEGE HSBC'S KNOWLEDGE .................................................. 15

        1.   The Swap Agreement Relieved HSBC Of Any Duty To Disclose ...... 16

        2.   Wailea Fails To Adequately Allege HSBC's Knowledge In Any Event ... 17

    F.   WAILEA FAILS TO STATE A CLAIM UNDER THE CALIFORNIA
        CORPORATIONS CODE .............................................................. 19

        1.   Wailea's Section 25401 Claim Is Time-Barred .................................. 20

        2.   Wailea Cannot Point To Any Representations Subject To
            Section 25401 ...................................................................... 22

IV.  CONCLUSION ................................................................................. 24

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Rules and Statutes**

4

Cal. Corp. Code § 25017(b) ............................................................................ 24

5

Cal. Corp. Code § 25506(b) ............................................................................ 20

6

Cal. Corp. Code § 25401 ............................................................................ 19-24

7

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 5

8

**Cases**

9

*Albany Motor Inn & Rest., Inc. v. Watkins*,

10

85 A.D.2d 797 (3d Dep't 1981) ...................................................................... 14

11

*Albert Elia Bldg. Co., Inc. v. Am. Sterilizer Co.*,

622 F.2d 655 (2d Cir. 1980) ............................................................................ 9

12

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,

13

158 Cal. App. 4th 226 (2007) ........................................................................ 24

14

*Ashcroft v. Iqbal*,

15

129 S. Ct. 1937 (2009) ..................................................................................... 5

16

*Bank of the West v. Valley Nat'l Bank*,

41 F.3d 471 (9th Cir. 1994) ............................................................................ 23

17

*Banque Arabe et Int'l D'Investissement v. Md. Nat'l Bank*, 850 F. Supp. 1199 (S.D.N.Y.

18

1994)..................................................................................................................... 9

19

*Beecher v. Able*,

575 F.2d 1010 (2d. Cir. 1978) ........................................................................ 10

20

*Bell Atl. Corp. v. Twombly*,

21

550 U.S. 544 (2007) ......................................................................................... 5

22

*Bowden v. Robinson*,

23

67 Cal. App. 3d 705 (1977) ............................................................................ 22

24

*Briskin v. Ernst & Ernst*,

589 F.2d 1363 (9th Cir. 1978) ........................................................................ 22

25

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,

26

590 F.3d 806 (9th Cir. 2010) ............................................................................ 5

27

*CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*,

28

No. 07 Civ. 11078 (LTS)(AJP), 2009 WL 2033048 (S.D.N.Y. July 13, 2009)................ 15

iii.

*Danann Realty Corp. v. Harris,*
5 N.Y.2d 317 (1959) ................................................................................. 15

*Davies v. Krasna*, 14 Cal. 3d 502, 514 (1975) .................................................. 22

*Del Turco v. BRB Ceramic Tiles Marble & Stone,*
No. 03-CV-1516 (JG), 2006 WL 2506588 (E.D.N.Y. Aug. 18, 2006) ............................ 8

*Deveny v. Entropin, Inc.,*
139 Cal. App. 4th 408 (2006)....................................................................... 20, 21

*Donovan v. RRL Corp.,*
26 Cal. 4th 261 (2001)................................................................................. 9,16

*DynCorp. v. GTE Corp.,*
215 F. Supp. 2d 308 (S.D.N.Y. 2002) ............................................................ 17

*Expansion Pointe Props. Ltd. P'ship v. Procopio, Cory, Hargreaves & Savitch, LLP,*
152 Cal. App. 4th 42 (2007)......................................................................... 6

*Fields v. Legacy Health Sys.,*
413 F.3d 943 (9th Cir. 2005)......................................................................... 6

*Frankel v. Bd. of Dental Exam'rs,*
46 Cal. App. 4th 534 (1996)......................................................................... 7

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.,*
224 F. Supp. 2d 520 (W.D.N.Y. 2002) ............................................................ 11

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.,*
No. 01-CV-6217 (CJS) (MWP), 2005 WL 3018720 (W.D.N.Y. Oct. 18, 2005) ............. 16

*FSP, Inc. v. Societe Generale,*
No. 02-CV-4786 (GBD), 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005)......................... 11

*G&F Assoc. Co. v. Brookhaven Beach Health Related Facility,*
249 A.D.2d 441 (2d Dep't 1998) .................................................................. 7

*Ginett v. Computer Task Grp., Inc.,*
962 F.2d 1085 (2d Cir. 1992).......................................................................... 7

*Harsco Corp. v. Segui,*
91 F.3d 337 (2d Cir. 1996)............................................................................. 15

*Huynh v. Chase Manhattan Bank,*
465 F.3d 992 (9th Cir. 2006).......................................................................... 20

*I-Enterprise Co., LLC v. Draper Fisher Jurvetson Mgmt. Co. V., LLC,*
No. C-03-1561 (MMC), 2005 WL 3590984 (N.D. Cal. Dec. 30, 2005)...................... 22

iv.

*In re Infonet Servs. Corp. Secs. Litig.*,
310 F. Supp. 2d 1106 (C.D. Cal. 2003)............................................................. 21

*In re Leslie Fay Cos. Sec. Litig.*,
918 F. Supp. 749 (S.D.N.Y. 1996) ................................................................... 13

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)............................................................................ 20

*Intermedics v. Ventritex, Inc.*,
822 F. Supp. 634 (N.D. Cal. 1993) .................................................................. 22

*JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. de C.V.*,
29 Misc. 3d 1227(A), 2010 WL 4868142 (Sup. Ct. N.Y. Cnty. Mar. 16, 2010) ............... 15

*K3C Inc. v. Bank of Am.*,
204 Fed. App'x 455 (5th Cir. 2006) (per curiam)............................................ 15

*Korea First Bank of N.Y. v. Noah Enters., Ltd.*,
12 A.D.3d 321 (1st Dep't 2004)...................................................................... 16

*Mackinder v. Schawk, Inc.*,
No. 00 Civ. 6098 (DAB), 2005 WL 1832385 (S.D.N.Y. Aug. 2, 2005) ......................... 8-9

*Mary Pickford Co. v. Bayly Bros., Inc.*,
12 Cal. 2d 501 (1939)................................................................................... 21-22

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
927 N.Y.S.2d 517 (Sup. Ct. N.Y. Cnty. 2011)................................................. 13

*Mosher v. Mayacamas Corp.*,
215 Cal. App. 3d 1 (1989)............................................................................. 13

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......................................................................... 5, 17

*Olinick v. BMG Entm't*,
138 Cal. App. 4th 1286 (2006)....................................................................... 6

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996)........................................................................... 23

*Peterson v. Highland Music, Inc.*,
No. CV 93-4672 (WDK), 1995 U.S. Dist. LEXIS 22008 (C.D. Cal. June 20, 1995)........ 6

*Picard v. HSBC Bank plc*,
--- B.R. ----, 2011 WL 3200298 (S.D.N.Y. July 28, 2011)............................... 19

*Polar Int'l Brokerage Corp. v. Reeve*,
108 F. Supp. 2d 225 (S.D.N.Y. 2000) ............................................................ 19

v.

*Reiss v. Fin. Performance Corp.*,
97 N.Y.2d 195 (2001) .................................................................................... 12

*Reliance Fin. Corp. v. Miller*,
557 F.2d 674 (9th Cir. 1977).......................................................................... 14

*Republic Nat'l Bank v. Hales*,
75 F. Supp. 2d 300 (S.D.N.Y. 1999)............................................................... 15

*Rest. Creative Concepts Mgmt., LLC v. Ne. Rest. Dev., LLC*,
83 A.D.3d 1189 (3d Dep't 2011) ..................................................................... 7

*Ryan v. Hunton & Williams*,
No. 99-CV-5938 (JG), 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000)............................ 18-19

*Seidman & Seidman v. Wolfson*,
50 Cal. App. 3d 826 (1975)............................................................................... 6

*Staehr v. Hartford Fin. Servs. Grp.*,
547 F.3d 406 (2d Cir. 2008) ....................................................................... 20, 21

*Steen v. Bump*,
233 A.D.2d 583 (3d Dep't 1996) ..................................................................... 14

*Su Mei, Inc. v. Kudo*,
302 A.D.2d 740 (3d Dep't 2003) ....................................................................... 7

*Surlak v. Surlak*,
95 A.D.2d 371 (2d Dep't 1983) ....................................................................... 16

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)........................................................................ 2,14

*Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*,
322 F. Supp. 2d 482 (S.D.N.Y. 2004) ............................................................... 18

*UniCredito Italiano SpA v. JPMorgan Chase Bank, N.A.*,
288 F.Supp.2d 485 (S.D.N.Y. 2003)............................................................. 12,17

*Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*,
79 N.Y.2d 576 (1992) ...................................................................................... 7

*VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*,
594 F. Supp. 2d 334 (S.D.N.Y. 2008)............................................................... 12

*Viterbi v. Wasserman*,
191 Cal. App. 4th 927 (2011).................................................................... 23-24

*Wash. Mut. Bank, FA v. Sup. Ct.*,
24 Cal. 4th 906 (2001)...................................................................................... 6

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

*YTY Indus. SDN. BHD v. The Dow Chem. Co.*, No. CV-05-8881 (SGL), 2009 WL 3633871, at *20-21 (C.D. Cal. Oct. 28, 2009) .................................................................. 9, 14

**Other Authorities**

1 Marsh & Volk, *Practice Under the California Securities Laws* (2011) § 14.03[3][a] & [6] ..................................................................................................................... 22

Answer, *Tuttle v. Sky Bell Asset Mgmt. LLC*, No. 10-cv-03588 (WHA) (N.D. Cal. May 9, 2011) (Dkt. No. 131) ........................................................................................... 10

HSBC Holdings plc, Annual Report (Form 20-F) (Mar. 10, 2009) .................................. 18

vii.

**TO PLAINTIFF WAILEA PARTNERS, L.P. AND ITS COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on December 9, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 1 on the 17th Floor in the San Francisco Courthouse of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, Defendant HSBC Bank USA, N.A. ("HSBC") will, and hereby does, move this Court to dismiss the Complaint brought by Plaintiff Wailea Partners, L.P. ("Wailea") in its entirety and each and every claim contained therein on the following grounds:

Pursuant to Federal Rule of Civil Procedure 12(b)(6), HSBC moves this Court to dismiss all of Wailea's claims because Wailea has failed to allege facts sufficient to state any claim upon which relief can be granted.

The Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Jonathan A. Patchen in Support Thereof, the Request for Judicial Notice in Support Thereof, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

The following issues are to be decided on this motion:

1. Whether Wailea has failed to allege facts sufficient to state a claim against HSBC for rescission based upon an alleged mutual mistake (the First Cause of Action). *See* Part III.C, *infra*.

2. Whether Wailea has failed to allege facts sufficient to state a claim against HSBC for rescission based upon an alleged unilateral mistake (the Second Cause of Action). *See* Parts III.C and E, *infra*.

3. Whether Wailea has failed to allege facts sufficient to state a claim against HSBC for rescission based upon HSBC's alleged innocent misrepresentation (the Third Cause of Action). *See* Parts III.C and D, *infra*.

4. Whether Wailea has failed to allege facts sufficient to state a claim against HSBC for rescission based upon an alleged failure of condition (the Fourth Cause of Action). *See* Part

1    III.B., *infra*.

2        5.        Whether Wailea has failed to allege facts sufficient to state a claim against HSBC

3    for rescission based upon HSBC's alleged violation of California Corporations Code § 25401 (the

4    Fifth Cause of Action).  *See* Part III.F, *infra*.

5                    **I.        PRELIMINARY STATEMENT**

6                Wailea is a sophisticated hedge fund that chose to make a leveraged synthetic

7    investment in Senator Fund ("Senator" or the "Reference Fund"), a so-called feeder fund which

8    placed its assets directly with the investment advisory arm of Bernard L. Madoff Investment

9    Securities LLC ("BLMIS").  The vehicle for the investment was a swap agreement with HSBC.[1]

10   HSBC, in effect, provided financing for a leveraged investment by Wailea in a vehicle it chose,

11   and the compensation HSBC is entitled to under the Swap Agreement is consistent with what it

12   would receive for making a loan equal to the difference between the total notional amount of the

13   swap less total premium payments made by Wailea (an amount referred to as the "floating

14   notional amount").  In exchange for receiving this leveraged exposure to Senator, Wailea was

15   obligated to pay HSBC an upfront premium of approximately 30% of the notional investment.  At

16   the end of the swap, Wailea agreed that it would receive the return an investor would have earned

17   had it invested the notional amount in Senator, less the floating notional amount and interest due

18   to HSBC.   Under the Swap Agreement, before HSBC is obligated to pay any amounts to Wailea,

19   the value of the notional investment in Senator would need to exceed the floating notional amount,

20   plus interest.  If not, Wailea receives nothing.  Thus, Wailea bore the risk that the return on its

21   _____

22   [1]    The initial swap agreement and its amended and restated versions are attached to the
        Complaint as Exhibits 1-3.  For ease of reference, this memorandum cites to the initial swap
23      agreement, referred to hereafter as "Swap Agreement," because the contractual provisions relevant
        to this motion were never amended or restated.  In addition, as indicated in its preamble, the Swap
24      Agreement incorporates by reference the entirety of the 1992 ISDA Master Agreement
        (Multicurrency Cross-Border) ("ISDA Agreement"), 2000 ISDA Definitions, and 2002 ISDA
25      Equity Derivatives Definitions ("Equity Definitions").  The incorporated agreement and
        incorporated definitions, which can be considered in connection with this motion, *see Swartz v.*
26      *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007), are annexed as Exhibits A-C, respectively, of the
        Declaration of Jonathan A. Patchen in Support of HSBC's Motion to Dismiss.

27

28

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

synthetic investment in Senator would not be sufficient to recover its upfront premium.

With the benefit of hindsight the world now knows that Bernard L. Madoff operated the largest Ponzi scheme in history. When Madoff's fraud became public knowledge, HSBC, as it was contractually entitled to do, terminated the Swap Agreement. The decline in value of Senator's shares due to Madoff's fraud is likely to eliminate any payment obligation of HSBC under the Swap Agreement, and may require Wailea to repay HSBC for the financing provided. Faced with this reality, Wailea has understandably elected not to pursue any remedies under the Swap Agreement.[2]

Rather than accept the risks of its chosen investment,[3] Wailea instead seeks to rescind the Swap Agreement on various legal theories based directly or indirectly on mistake of fact as well as on a plainly time-barred California state securities law claim. The alleged mistake is that Madoff failed to follow the investment strategy he claimed to employ. Of course the world now knows that Madoff's fraud was not that he was making rogue trades that were outside the strategy mandate, but rather that he was making no trades at all, every purported trade being a sham evidenced by fictitious documentation that Madoff and his associates forged. Wailea's contrived claim for rescission is untenable not just because it is not a fair or plausible account of Madoff's loss-causing conduct at the time of contracting, but more particularly because it conflicts with the risk and reward allocation that two sophisticated parties agreed to under their contractual arrangements. In effect, Wailea asks the Court to make HSBC become something that Wailea did not bargain for – an insurer of Wailea's investment decision despite clear contractual language to

---

[2]  Because it is not yet clear what, if any, amounts Senator will pay to its shareholders due to the ongoing suspension of redemptions by the fund, it has not yet been possible for HSBC to calculate the final "Equity Amount" or the resulting "Cash Settlement Amount" due to be paid to or by Wailea under the Swap Agreement. *See* Swap Agreement ¶ 2. HSBC expects the Equity Amount to be negative, and thus, Wailea will likely owe an amount to HSBC. HSBC reserves all rights in this regard.

[3]  Notably, Wailea does not allege that HSBC approached it and suggested the investment at issue in this case. In fact, the Complaint suggests the opposite. *See* Compl. ¶ 2 (alleging that "Wailea sought . . . large and reputable international financial institutions" to act as counterparties to swaps tied to the split-strike conversion strategy).

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1  the contrary.

2         Wailea's claims have no merit because, with no room for uncertainty or ambiguity,

3  Wailea failed to obtain any contractual condition or representations concerning the investment

4  strategy it now claims to have been mistaken about, expressly assumed the risk of mistake,

5  expressly disclaimed reliance on any purported representation of HSBC or any knowledge HSBC

6  might have, and waived any claim based on any alleged omission by HSBC.  Additionally, any

7  claim that Plaintiff could assert under Section 25401 of the California Corporations Code would

8  be barred by the applicable statute of limitations requiring this suit to have been filed within two

9  years of the discovery of Madoff's fraud.  This Court should accordingly dismiss Wailea's

10  Complaint in its entirety.

11                      **II.      <u>BACKGROUND</u>**

12         As discussed above, under the Swap Agreement, at the initiation of the swap,

13  Wailea was obligated to pay HSBC an upfront premium payment, and at the end of the swap to

14  pay an amount that had accrued on the floating notional amount at a rate of one-month LIBOR

15  plus a spread.  In exchange, HSBC was obligated to pay Wailea the return earned on an

16  investment in Senator of a notional investment of approximately 3.5 times its upfront premium

17  payment.  Wailea originally paid $8.87 million to own $31 million in Senator exposure.  Swap

18  Agreement ¶¶ 1-2.  Wailea had the option to increase its exposure from time to time, *id.* ¶ 6, which

19  it did on several occasions, ultimately making payments totaling $15.97 million.  Compl. ¶ 24.

20         As understood and desired by Wailea, substantially all of Senator's assets were

21  placed with BLMIS.  *See id.* ¶ 14.  After Madoff's fraud became publically known and BLMIS

22  was placed into liquidation in December 2008, all subscriptions and redemptions in Senator were

23  suspended until further notice.  *Id.* ¶ 29.  Madoff was arrested and pled guilty to numerous federal

24  crimes, and admitted during his guilty plea that, beginning in the early 1990s, he "operated a Ponzi

25  scheme through the investment advisory side of [his] business, [BLMIS]."  *See* Request for

26  Judicial Notice, Ex. F (Plea Hrg. Tr. at 23, *United States v. Madoff*, No. 09-CR-213 (S.D.N.Y.

27  Mar. 12, 2009) (Dkt. No. 57)) (cited in paragraph 30 of the Complaint).  Immediately after

28  Madoff's arrest, HSBC terminated the Swap Agreement pursuant to its unilateral right to do so

4.

1  under the terms of the agreement, based on the material adverse change to Senator.  Swap

2  Agreement ¶ 11(a)(i).

3           Wailea now seeks to rescind the Swap Agreement on five alternative theories:  (1)

4  that Wailea and HSBC were mutually mistaken in their belief that Senator's capital would be

5  invested pursuant to the split-strike strategy; (2) that Wailea was unilaterally mistaken about that

6  belief, and that HSBC knew or had reason to know of its mistake; (3) that HSBC made innocent

7  misrepresentations concerning the split-strike strategy and the value of Senator, which Wailea

8  replied upon in entering the Swap Agreement; (4) that investment of Senator's capital pursuant to

9  the split-strike strategy was an express condition of the contract that never occurred; and (5) that

10  HSBC made misleading statements and omissions in connection with the sale of securities, in

11  violation of California law.  *See id.* ¶ 43-64.  As a remedy, Wailea seeks return of the $15.97

12  million in net premium payments made by it to HSBC pursuant to the Swap Agreement.

## III.    ARGUMENT

14           To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead

15  "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

16  will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "Although

17  [the Court] must take all of the factual allegations in the complaint as true, . . . [c]onclusory

18  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

19  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (internal

20  quotation marks and citation omitted).  Rather, a complaint's allegations must "state a claim to

21  relief that is plausible on its face[,]" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009), and under

22  this plausibility standard, courts look only to the complaint's "non-conclusory 'factual content,'

23  and reasonable inferences from that content," and must determine, from that information alone,

24  that the facts pleaded by the plaintiff are more than merely consistent with a defendant's liability.

25  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

26  ### A.    WAILEA'S CLAIMS ARE GOVERNED BY NEW YORK LAW

27           Wailea's first four causes of action based on contract are governed by New York

28  law because Wailea agreed that New York law would govern.  *See* Swap Agreement at 1 ("[T]he

5.

1  governing law is the law of the State of New York, without reference to choice of law doctrine.").

2  This selection clause is valid, enforceable, and binding.

3          A district court sitting in diversity applies the choice of law rules of the state in

4  which it sits – here, California.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).

5  California strongly favors the application of choice of law clauses, and a court will apply the

6  parties' contractually chosen law unless the designated state has no substantial relationship to the

7  parties or the transaction, or the chosen law would contravene a fundamental policy of California.

8  *Wash. Mut. Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906, 916-17 (2001).

9          Where, as here, one of the parties is domiciled in the designated state, *see* Compl.

10 ¶ 8 (alleging that HSBC maintains its principal office in New York), the substantial relationship

11 and reasonable basis tests are met.  *Expansion Pointe Props. Ltd. P'ship v. Procopio, Cory,*

12 *Hargreaves & Savitch, LLP*, 152 Cal. App. 4th 42, 59 (2007).  Additionally, because there is no

13 significant difference between California and New York law on rescission claims, applying New

14 York contract law in this case would not undermine the public policy of California.  *See Peterson*

15 *v. Highland Music, Inc*., No. CV 93-4672 (WDK), 1995 U.S. Dist. LEXIS 22008, at *7 (C.D. Cal.

16 June 20, 1995).

17         Finally, because the choice of New York law in the Swap Agreement is valid, New

18 York law applies to all causes of action arising out of the Swap Agreement, even claims, such as

19 Wailea's, seeking to rescind that Agreement.  *Olinick v. BMG Entm't*, 138 Cal. App. 4th 1286,

20 1299 (2006) (holding that "a valid choice-of-law clause . . . encompasses all causes of action

21 arising from or related to that agreement, regardless of how they are characterized") (internal

22 quotation marks, emphasis and citation omitted); *Seidman & Seidman v. Wolfson*, 50 Cal. App. 3d

23 826, 831 (1975) (concluding that a choice of law clause in contract applies to claim for rescission).

24     **B.     SENATOR'S INVESTMENT STRATEGY WAS**
           **NOT A CONTRACTUAL CONDITION**
25

26         Wailea seeks to rescind the Swap Agreement on the grounds that a purported

27 condition to the parties' agreement – specifically that Senator would invest its assets pursuant to a

28 split-strike strategy – failed to obtain.  It is well-settled under New York law, however, that

6.

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

"[c]onditions are not favored . . . , and in the absence of unambiguous language, a condition will not be read into [an] agreement."  *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1099-1100 (2d Cir. 1992).  *See also Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*, 79 N.Y.2d 576, 581 (1992) (collecting cases).  To obtain rescission based on a failure of condition, Wailea must point to *express* language on the face of the Swap Agreement that establishes the parties' unambiguous intent to condition the Swap Agreement's formation on Senator's capital being invested pursuant to a split-strike strategy.  *See Rest. Creative Concepts Mgmt., LLC v. Ne. Rest. Dev., LLC*, 83 A.D.3d 1189, 1191 (3d Dep't 2011); *G&F Assoc. Co. v. Brookhaven Beach Health Related Facility*, 249 A.D.2d 441, 443 (2d Dep't 1998).  The standard is the same under California law. *See, e.g., Frankel v. Bd. of Dental Exam'rs*, 46 Cal. App. 4th 534, 550 (1996) (observing that because conditions are "not favored in the law," a court will not construe a term as a condition "absent plain and unambiguous language to that effect") (citations omitted).

The only reference in the Swap Agreement to Senator's investment strategy appears in the "Investment Guidelines," which are contained in an annex that is incorporated by reference in the Swap Agreement.  *See* Swap Agreement ¶ 7 & Annex II.  The annex describes Senator and its strategy, but this description cannot be construed as a condition because it lacks the "'unmistakable language of condition' such as 'if,' 'unless and until' and/or 'null and void.'"  *Su Mei, Inc. v. Kudo*, 302 A.D.2d 740, 741 (3d Dep't 2003) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691 (1995)).  There is likewise no language in the Swap Agreement that provides Wailea with any rights in the event Senator fails to comply with the Investment Guidelines.  To the contrary, the only party with the right to take action under such circumstances is HSBC.  Swap Agreement ¶ 11(a)(i).  HSBC, which enjoyed none of the upside associated with this investment, unsurprisingly did not choose to be responsible for any downside, as the Swap Agreement makes quite clear.[4]  *See id.* ¶ 2 (defining the "Equity Amount"

---

[4]   In an effort to make its case appear to be more sympathetic, Wailea speculates about the supposed content of reports that HSBC Bank plc commissioned from KPMG, which Wailea apparently has not seen.  Compl. ¶ 33 (allegations regarding the contents of the report made "on (footnote continued)

7.

1  due to Wailea at the end of the swap and indicating that Wailea could have negative equity on the

2  final Cash Settlement Payment Date).

3         Far from being a condition, nowhere in the Swap Agreement does HSBC provide

4  any assurance, promise, guarantee, or representation that Senator's capital will be invested

5  pursuant to a split-strike conversion strategy.  In fact, Wailea explicitly acknowledged that it was

6  *not* relying on any representation whatsoever by HSBC in entering into the Swap Agreement, *see*

7  Swap Agreement ¶ 12(d), and that HSBC was making no representations whatsoever with respect

8  to Senator in particular, *see id.* ¶ 12(g).  Moreover, Wailea cannot look outside the four corners of

9  the contract to establish a condition because it contains an integration clause that explicitly states

10  that the Swap Agreement "supersedes all oral communication and prior writings with respect

11  thereto."  ISDA Agreement § 9(a).  *See, e.g.*, *Del Turco v. BRB Ceramic Tiles Marble & Stone*,

12  No. 03-CV-1516 (JG), 2006 WL 2506588, at *5 (E.D.N.Y. Aug. 18, 2006) (citations omitted)

13  (concluding that where, as here, a contract contains an integration clause, a court cannot, as a

14  matter of law, look outside the contract for evidence of a condition precedent).

15         Further, unlike the absence of conditional language with respect to the "split-strike

16  strategy," other sections of the Swap Agreement clearly demonstrate that the parties knew how to

17  create a condition when they intended to create one.  *See* ISDA Agreement § 2(a)(iii) ("Each

18  obligation of each party [] is subject to [] *the condition precedent* that no Event of Default or

19  Potential Event of Default . . . has occurred.") (emphasis added); *id.* (payment from each party is

20  due unless there is another "applicable condition precedent *specified in this Agreement*.")

21  (emphasis added).  No other condition is so specified, and the Investment Guidelines fail to

22  incorporate such language.  *See Mackinder v. Schawk, Inc.*, No. 00 Civ. 6098 (DAB), 2005 WL

23  1832385, at *7 (S.D.N.Y. Aug. 2, 2005) (rejecting argument that term was a condition where "the

24  parties knew how to construct express conditions and, indeed, included many such conditions in

25  _____

26  information and belief").  For purposes of this motion, it is sufficient to note that whatever

27  knowledge HSBC might have from these reports, it was under no duty to share such information
with Wailea.  *See infra* Part III.E.1.

28

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1    the Agreement" but the "contested contractual provision [did] not contain any of the usual

2    identifying language that forms an express condition, such as 'if' or 'on the condition that'").

3        **C.    WAILEA ASSUMED THE RISK OF MISTAKE AS TO ITS SYNTHETIC INVESTMENT IN SENATOR AND ITS CLAIMS FOR BOTH MUTUAL AND UNILATERAL MISTAKE MUST BE DISMISSED**

4

5        Under New York law, a mistake of a material fact is not grounds for rescission if

6    the party seeking rescission bears the risk of mistake. *See Albert Elia Bldg. Co., Inc. v. Am.*

7    *Sterilizer Co.*, 622 F.2d 655, 656-57 (2d Cir. 1980). The same is true under California law. *See*

8    *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 282-83 (2001). A party will be held to bear the risk of

9    mistake if any one of the following three circumstances apply: (1) the risk is allocated by

10   agreement; (2) at the time the contract is made, the party seeking rescission has only limited

11   knowledge with respect to the facts to which the mistake relates, but treats that knowledge as

12   sufficient; or (3) the risk is allocated in terms supplied by the court on the ground that it is

13   reasonable under the circumstances to do so. *Albert Elia*, 622 F.2d at 656-57 (citation omitted).

14   In this case all three circumstances apply and independently shift the risk of mistake to Wailea.

15   Wailea's claims for rescission based on mutual mistake and unilateral mistake should therefore be

16   dismissed.[5]

17       **1.    The Swap Agreement Makes Clear That Wailea Bears The Risk Of Mistake**

18

19       Wailea is a sophisticated business entity formed for the purpose of entering into

20   _____

21   [5]    Wailea's claim for rescission based on an innocent misrepresentation should also be defeated

22   by virtue of its assumption of risk of the facts concerning Senator's investment strategy since that claim is essentially a claim for mutual mistake with the additional element of reliance by the party

23   seeking rescission. *See Banque Arabe et Int'l D'Investissement v. Md. Nat'l Bank*, 850 F. Supp. 1199, 1225 (S.D.N.Y. 1994) ("[T]his innocent misrepresentation exception to the scienter

24   requirement refers specifically to a situation in which the parties to a transaction are *mutually*

25   *mistaken* about the terms of the contract.") (emphasis in original). *See also YTY Indus. SDN. BHD v. The Dow Chem. Co.*, No. CV-05-8881 (SGL), 2009 WL 3633871, at *21 (C.D. Cal. Oct. 28,

26   2009) (holding that plaintiff's claim for rescission based on innocent misrepresentation was not cognizable under California law and was "subsumed by its claims for rescission based on

27   unilateral and mutual mistake") (collecting cases). This claim is further defeated by the reasons explained in Part III.D.

28

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1  transactions like that at issue in this case, *see* Compl. ¶ 1, and represented it was perfectly capable

2  of understanding such transactions.  Specifically, Wailea agreed to multiple contractual terms

3  concerning the risk it was assuming both at the time it entered into the Swap Agreement and again

4  on the two occasions it agreed to amend and restate the Swap Agreement.  These terms

5  demonstrate clearly that Wailea assumed the risk that it would lose its upfront payments, whether

6  due to a mistake about Senator's investment strategy or otherwise.

7         First, the Swap Agreement contains an express assumption of the risk by Wailea of

8  its investment decision, which alone suffices to defeat Wailea's claims for rescission based on a

9  mistake with respect to Senator.  *See Beecher v. Able*, 575 F.2d 1010, 1015 (2d. Cir. 1978)

10  (holding that if "there is a term in a valid agreement that the risk as to the existence of an assumed

11  state of facts is to be upon (one of the contracting parties), there can be no rescission of the

12  transaction for mistake as to such facts.") (internal quotation marks and citation omitted).  Wailea

13  represented that it made its own independent decision to enter the Swap Agreement and agreed

14  HSBC would not "bear any responsibility or liability if the legal, . . . investment, financial,

15  accounting, business or credit effects or consequences of this Transaction are other than those

16  contemplated by [Wailea]." Swap Agreement ¶ 12(c).  Those consequences, which Wailea agreed

17  to accept, are exactly what Wailea now seeks to avoid through this action.  Wailea promised that it

18  was capable of evaluating the risks of entering into the Swap Agreement and was "willing to

19  accept those terms and conditions [of the contracts] and to assume (financially and otherwise)

20  those risks." *Id.* ¶ 12(b).  *See also* Equity Definitions § 13.1(e) (Wailea agreed that it understood

21  the "terms, conditions and risks" of the transaction and was "willing to assume those risks.").

22  Moreover, in defense of an action brought against Wailea by its investors, Wailea asserts that its

23  investors "assumed the risk of loss in the subject investments" – including the investment at issue

24  in this case – "which risks were disclosed to the [investors]."  *See* Answer, Eighth Affirmative

25  Defense, *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. 10-cv-03588 (WHA) (N.D. Cal. May 9, 2011)

26  (Dkt. No. 131).  Wailea cannot plausibly maintain that it did not assume the risk of its investment,

27  but its investors did.

28         Second, Wailea agreed to accept *sole* responsibility for its own due diligence on

10.

Senator.  For example, Wailea agreed that it would remain "solely responsible for making an

independent appraisal of and investigation into the financial condition, prospects,

creditworthiness, status and business of the Reference Fund[,]" Swap Agreement ¶12(f), and that

it was not relying on any representations made by HSBC with respect to Senator in entering into

the Swap Agreement.  *Id.* ¶¶ 12 (d), (g); Equity Definitions §§ 13.1, 13.4(b).[6]  Further, Wailea

represented that it had read and received "all relevant documents with respect to [Senator]," that it

"underst[ood] the nature of making an investment in [Senator], and has concluded that such an

investment would be suitable for it in light of its own investment objectives, financial capabilities

and expertise."  Swap Agreement ¶ 12(i).  Since Wailea elected to treat whatever knowledge it had

concerning Senator as sufficient and expressly disclaimed any reliance on any statements made by

HSBC about the same subject, it accordingly agreed to assume the risk of mistake as to Senator's

investment strategy.  *See, e.g., Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, 224 F.

Supp. 2d 520, 537 (W.D.N.Y. 2002) (citing *Beecher*, 575 F.2d at 1015).  *See also FSP, Inc. v.*

*Societe Generale*, No. 02-CV-4786 (GBD), 2005 WL 475986, at *15 (S.D.N.Y. Feb. 28, 2005)

(holding counter-claimant's contractual agreement to assume risks relating to potential

inaccuracies in representations and warranties precluded a mistake claim).

       Third, by the plain language of the Swap Agreement, Wailea was aware that there

was a risk that Senator could be affected by fraud, Swap Agreement ¶¶ 9, 11(a)(ii), but did nothing

to insure itself against that risk.  By not having negotiated provisions to protect itself from losses

stemming from such events, Wailea assumed the risk of such an outcome, and it cannot now claim

a mistake based on the particular path to that result.  Senator may have imploded due to any

number of reasons – fraud, mismanagement, bad luck, poor timing, other criminal acts, the

recession, etc.  But the outcome for Wailea is the same regardless of the reason for Senator's

demise, and this Court should not allow Wailea to receive risk protection that it did not bargain

---

[6]   These provisions of the Equity Definitions are incorporated by reference into the "Non-Reliance" and "Additional Acknowledgements" representations in paragraph twelve of the Swap Agreement.

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1  for.  Under New York law, courts will not refuse to enforce the express language of a contract

2  simply because the results of the bargain do not turn out the way a party would have hoped.  *See*

3  *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001).

4            In sum, the Swap Agreement – which Wailea executed on three separate occasions

5  – makes quite clear that Wailea assumed all risks inherent in tying its investment to the

6  performance of Senator, including the risk that Senator's capital was not being invested in

7  accordance with its stated investment strategy as a result of fraud.  There is accordingly nothing

8  inequitable about Wailea's inability to recover its upfront premium payments from HSBC,

9  because that is precisely the result contemplated by the Swap Agreement in these circumstances.

10  Wailea is a sophisticated hedge fund, and "[s]ophisticated parties . . . are held to the terms of their

11  contracts."  *UniCredito Italiano SpA v. JPMorgan Chase Bank*, 288 F.Supp.2d 485, 499 (S.D.N.Y.

12  2003) (citation omitted).  *See also VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*,

13  594 F. Supp. 2d 334, 337, 343-44 (S.D.N.Y. 2008) (concluding that a sophisticated party to an

14  ISDA-based swap agreement cannot sustain a claim for rescission simply because it failed to

15  appreciate the risks it agreed to assume).

16            **2.**     **Even Without The Swap Agreement's Clear Allocation**
                  **Of Risk, Wailea Assumed The Risk Of Mistake**

17

18            Even if the Swap Agreement does not expressly and repeatedly allocate the risk of

19  mistake to Wailea (which it does), Wailea would still bear that risk.  Wailea alleges that it was

20  aware of, and concerned about, the risk that Senator's capital would not be invested pursuant to a

21  split-strike conversion strategy – the very possibility it now claims it was mistaken about.  As

22  alleged, Wailea sought repeated assurances about Senator's investment strategy, *see* Compl. ¶¶ 15-

23  18, 32, and was even able to persuade Senator to amend its offering memorandum to describe its

24  investment strategy more clearly, *see id.* ¶ 16.

25            Nevertheless, despite Wailea's purported concerns, Wailea did not obtain any

26  contractual protection in the event that Senator did not invest its capital pursuant to the split-strike

27  strategy.   It did nothing apart from purportedly obtaining assurances from HSBC, which it

28  disclaimed reliance on, and representations from Senator itself, which Wailea failed to incorporate

12.

by reference into the Swap Agreement.  Wailea could, for example, have conditioned its

obligations under the Swap Agreement on Senator pursuing a split-strike conversion strategy,

which, as demonstrated above, it clearly failed to do.  *See supra* Part III.B.  Wailea could also

have negotiated for language providing it with remedies in the event of a breach in Senator's

investment strategy, but again, it did not.[7]  Accordingly, where, as here, "a party has been put on

notice of the existence of material facts which have not been documented and he nevertheless

proceeds with a transaction without securing the available documentation or inserting appropriate

language in the agreement for his protection, he may truly be said to have willingly assumed the

business risk that the facts may not be as represented.'"  *MBIA Ins. Corp. v. Credit Suisse Sec.

(USA) LLC*, 927 N.Y.S.2d 517, 532-33 (Sup. Ct. N.Y. Cnty. 2011) (citing *Rodas v. Manitaras*,

159 A.D.2d 341, 343 (1st Dep't 1990)) (collecting cases) (second alteration in original).  The same

result obtains under California law.  *See Mosher v. Mayacamas Corp.*, 215 Cal. App. 3d 1, 6

(1989).

### 3.    Wailea Bears The Risk Of Mistake As A Matter Of Law

Wailea entered into a speculative synthetic investment with HSBC using a third-

party investment vehicle, Senator, as the reference entity.  As contemplated by the parties, the

Swap Agreement provided Wailea leveraged exposure to Senator so that it could enjoy the benefit

of an investment in that fund without "having to own the asset itself[,]" Compl. ¶ 11, and

moreover, without raising the capital to buy the asset itself.  This was the subject of the parties'

exchange, and in fact what occurred.  *See* Compl. ¶ 3.  That should be the end of the matter.  *See

In re Leslie Fay Cos. Sec. Litig.*, 918 F. Supp. 749, 771 (S.D.N.Y. 1996) ("The parties here,

however, were not mistaken as to the subject of their exchange (stock in Leslie Fay).  They were

only mistaken as to the proper valuation of the securities.  Mutual mistake in *valuation* does not

warrant restitution.") (emphasis in original).

---

[7]    In fact, the parties agreed that if Senator amended its offering memorandum (on which Wailea purportedly relied on as assurance that the split-strike strategy would be followed), the agreement would terminate only if the amendment materially affected the risk to HSBC, regardless of the affect on Wailea.  Swap Agreement ¶ 11(a)(iv).

D.     **WAILEA'S INNOCENT MISREPRESENTATION CLAIM FAILS BECAUSE IT CANNOT PROVE RELIANCE ON ANY STATEMENTS BY HSBC**

To sustain its claim for rescission on account of an innocent misrepresentation, Wailea must "set forth the circumstances in detail showing that a false material representation was made and that [it] relied on the representation to [its] detriment[,]" *Albany Motor Inn & Rest., Inc. v. Watkins*, 85 A.D.2d 797, 798 (3d Dep't 1981), and that its reliance was justified. *See Steen v. Bump*, 233 A.D.2d 583, 584 (3d Dep't 1996). California courts likewise require a plaintiff to demonstrate reasonable reliance to obtain rescission of a contract based on an innocent misrepresentation. *See Reliance Fin. Corp. v. Miller*, 557 F.2d 674, 680 (9th Cir. 1977); *YTY Indus.*, 2009 WL 3633871, at *20-21 (citations omitted).

Even assuming that HSBC made a material misrepresentation, Wailea's innocent misrepresentation claim nonetheless fails because Wailea repeatedly and explicitly disclaimed any reliance on any statement by HSBC and specifically agreed that HSBC was making no representations with respect to Senator.[8]  *See* Swap Agreement ¶12(g) ("Neither [HSBC] nor any affiliate or representative thereof is making, and has not made, in connection with this Transaction any representation of warranty whatsoever as to the Reference Fund or as to any information contained in any document provided by the Reference Fund to [HSBC] or to any other person[.]"); *id.* ¶ 12(d) ("Neither party is relying on any communication (written or oral) from the other party or any of its affiliates or representatives as investment or other advice or as a recommendation to enter into this Transaction[.]"); Equity Definitions §§ 13.1, 13.4(b) (same).

---

[8]   Wailea also claims to have relied on representations concerning the value of Senator shares alleged to have been provided to it by HSBC on a monthly basis. Compl. ¶¶ 25-26. But Wailea could not have relied on these representations in entering into the Swap Agreement, because these representations occurred after the agreement had been executed. Moreover, the monthly statements, which can be considered in connection with this motion because they are referenced in the Complaint, *see Swartz*, 476 F.3d at 763, clearly indicated that they were for "informational purposes only" and contained a broad disclaimer against liability for any use of the information contained therein. *See* Valuation Report (Nov. 17, 2008), at 3, attached as Exhibit D to the Declaration of Jonathan A. Patchen ("HSBC Bank USA expressly disclaims . . . responsibility for any loss or damage arising out of the provision or use of this information (including, without limitation, incidental or consequential damages).").

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1    In the face of these clear and specific disclaimers, Wailea cannot, as a matter of

2  law, sustain its burden of proving reasonable reliance in connection with its innocent

3  misrepresentation claim.  *See, e.g., Harsco Corp. v. Segui*, 91 F.3d 337, 342-45 (2d Cir. 1996);

4  *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-23 (1959).  Indeed, courts in New York have

5  reached this conclusion with respect to disclaimers in ISDA-based agreements with nearly

6  identical language as in the Swap Agreement at issue here.  *See, e.g., JPMorgan Chase Bank, N.A.*

7  *v. Controladora Comercial Mexicana S.A.B. de C.V.*, 29 Misc. 3d 1227(A), 2010 WL 4868142, at

8  *7-8 (Sup. Ct. N.Y. Cnty. Mar. 16, 2010) (holding that where a sophisticated party disclaims

9  reliance on any representations of its contractual counterparty in an ISDA-based swap agreement,

10  its claims for negligent misrepresentation and fraud fail, because the disclaimer precludes any

11  showing of justifiable reliance); *CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, No. 07 Civ.

12  11078 (LTS)(AJP), 2009 WL 2033048, at *4-5 (S.D.N.Y. July 13, 2009) (holding that hedge fund

13  could not prove reliance on bank's statements due to no representation and merger clauses in

14  ISDA-based swap agreement); *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 306, 315-17

15  (S.D.N.Y. 1999) (same).  *See also K3C Inc. v. Bank of Am.*, 204 Fed. App'x 455, 459, 462-63 (5th

16  Cir. 2006) (per curiam) (affirming trial court's determination that disclaimers in ISDA-based swap

17  agreement precluded showing of reliance necessary to prove negligent misrepresentation and

18  fraud).  Moreover, "[c]ourts are more inclined to enforce a disclaimer clause where, as here, the

19  contracting parties are 'sophisticated business people' and the disclaimer clause is the product of

20  negotiations between them."  *CDO Plus Master Fund Ltd.*, 2009 WL 2033048, at *4 (citing

21  *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94 (1985)).  Thus, Wailea's claim for innocent

22  misrepresentation fails.

23    **E.    EVEN IF THE SWAP AGREEMENT DID NOT ALLOCATE
          THE RISK OF MISTAKE TO WAILEA, WAILEA'S UNILATERAL
24         MISTAKE CLAIM FAILS FOR THE ADDITIONAL REASONS THAT
          HSBC HAD NO DUTY TO DISCLOSE AND WAILEA FAILED TO
25         ADEQUATELY ALLEGE HSBC'S KNOWLEDGE**

26    To obtain rescission on the ground of unilateral mistake, the mistaken party must

27  show both a mistake as to a material fact and that the non-mistaken party engaged in fraud or other

28  wrongdoing.  *See Surlak v. Surlak*, 95 A.D.2d 371, 84 (2d Dep't 1983).  California law is similar

15.

in this respect.  *See Donovan*, 26 Cal. 4th at 281 (observing that a party seeking rescission on account of a unilateral mistake must show, among other things, that the non-mistaken party knew or should have known of the other party's mistake, or that enforcement would be unconscionable).

### 1.    The Swap Agreement Relieved HSBC Of Any Duty To Disclose

Even if Wailea's allegations sufficiently plead that HSBC was aware or should have been aware of Wailea's mistake (which, as discussed below, they do not), Wailea still must allege with specificity that HSBC engaged in wrongdoing or inequitable conduct such that Wailea is entitled to rescission.  *See Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co., LLC*, No. 01-CV-6217 (CJS) (MWP), 2005 WL 3018720, at *13 (W.D.N.Y. Oct. 18, 2005).  On this score, Wailea's Complaint is vague, but its allegations appear to be two-fold:  (1) that HSBC knew Senator's capital was not being invested pursuant to the split-strike conversion strategy and knew that Wailea was mistaken about that fact, but did not tell Wailea, *see* Compl. ¶ 50(i); or (2) that HSBC had no reasonable ground to believe that Senator's capital was being so invested, such that its representations concerning that fact were either innocent or negligent misrepresentations, *see id.* ¶ 50(ii).

Taking the second alternative first, which is in essence an allegation of negligence, Wailea cannot sustain any claim of innocent or negligent misrepresentation on the part of HSBC, because Wailea cannot show that it justifiably relied on any of HSBC's statements.[9]  *See supra* Part III.D.

Turning to Wailea's claim that HSBC knew Wailea was mistaken and failed to correct that mistake, Wailea waived the right to receive any information and HSBC had no obligation to disclose anything to Wailea.  Wailea speculates about the supposed content of reports that HSBC Bank plc commissioned from KPMG, which HSBC allegedly failed to share with

_____

[9]   To the extent Wailea relies on a negligent misrepresentation to undergird its claim for rescission based on unilateral mistake, its claim fails for the additional reason that it has not alleged any confidential or fiduciary relationship between it and HSBC, as it must.  *See Korea First Bank of N.Y. v. Noah Enters., Ltd.*, 12 A.D.3d 321, 323 (1st Dep't 2004).  Nor can it, because the Swap Agreement explicitly disavows such a relationship.  *See* Swap Agreement ¶ 15(g)(i).

Wailea.  Wailea apparently has not even seen the KPMG reports, but for purposes of this motion, it is sufficient to note that whatever knowledge HSBC might have from these reports, it was under no duty to share such information with Wailea.  HSBC's knowledge, if any, of Wailea's mistaken belief can only be actionable if HSBC had an obligation to disabuse Wailea of its mistake, but here, Wailea specifically acknowledged its awareness that HSBC and its affiliates may have been "in possession of information in relation to [Senator]," including "material" information, yet nevertheless agreed that HSBC had "no obligation" to disclose such information.  *See* Swap Agreement ¶ 20(b).  This clear contractual provision makes plain that Wailea, despite allegedly being told prior to the parties' agreement that "HSBC had retained KPMG to conduct an extensive due diligence review of BLMIS operations," Compl. ¶ 30, "failed to bargain . . . for the right to benefit from any knowledge gained by" HSBC concerning Senator's investment strategy, and it should not be heard to complain about the consequences of that provision now.  *UniCredito*, 288 F. Supp. 2d at 499.  Simply put, "[s]ophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties."  *DynCorp. v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002).

### 2.   Wailea Fails To Adequately Allege HSBC's Knowledge In Any Event

In any event, Wailea fails to allege that HSBC had any knowledge relevant to the claims asserted in this case.  Wailea alleges two sets of facts which it claims demonstrate that HSBC knew or should have known that Senator's capital was not being invested pursuant to the split-strike strategy:  (1) that HSBC received reports from KPMG, in both 2006 and 2008, which "noted several material risks of fraud and operational risks . . . with respect to the management and investment of BLMIS clients' money[,]" *see* Compl. ¶ 33; and (2) that HSBC redeemed its own investments in Senator in late 2008, *see id.* ¶¶ 37-39.

As an initial matter, Wailea's allegations concerning the 2008 KPMG Report and HSBC's redemptions from Senator in late 2008, *see* Compl. ¶¶ 34-37, are wholly irrelevant, because those allegations involve events which occurred after the Swap Agreement was executed – and, indeed, after the Swap Agreement was amended for the last time – and perforce have

17.

nothing to do with HSBC's knowledge at the time of contracting.  Wailea accordingly cannot rely on those facts to sustain its claim for rescission due to unilateral mistake.  *See, e.g., Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 502 n.3 (S.D.N.Y. 2004) (explaining that plaintiff's claims of misrepresentation or omission failed to the extent they were based on defendant's post-contractual conduct or knowledge).

In addition, Wailea alleges that HSBC made its own investment in Senator contemporaneously with the Swap Agreement.[10]  *See* Compl. ¶¶ 36-37.  This allegation does not permit a reasonable inference that HSBC knew or should have known, *at the time of contracting*, that Wailea was mistaken about Senator's investment strategy and therefore Wailea's unilateral mistake claim fails to meet Rule 8's plausibility standard.  *See Moss*, 572 F.3d at 969.  It would be completely senseless for HSBC to invest directly in Senator if it knew or had reason to believe that Senator was a sham.  Indeed, it is publicly known that HSBC, as a result of Madoff's fraud, lost nearly $1 billion in connection with transactions like the one at issue in this case,[11] a fact that is wholly inconsistent with any claim that HSBC had knowledge or reason to know of Madoff's fraud.

With respect to the 2006 KPMG report – the only knowledge Wailea alleges HSBC had at the time of contracting – Wailea fails to point to anything about the report that permits an inference that HSBC knew or had reason to know that Madoff was not pursuing the split-strike conversion strategy on behalf of Senator.  All Wailea claims is that the report "noted several material risks" including the "failure to segregate client funds from BLMIS funds" and the "use of client funds to make trades that deviate from the [split-strike conversion] strategy."  Compl. ¶ 33. Awareness of a risk is a far cry from knowledge or even reason to know of a fraud.  *See Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000)

---

[10]  It is, of course, typical in transactions such as the one at issue here for a leverage provider to hedge its obligations under a swap agreement by investing directly in the reference fund.  The parties explicitly dealt with this circumstance in their agreement.  *See* Swap Agreement ¶ 20(a).

[11]  *See* HSBC Holdings plc, Annual Report (Form 20-F) at 25, 28, 75 (Mar. 10, 2009), http://www.sec.gov/Archives/edgar/data/1089113/000095012310024633/u08435e20vf.htm.

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

1  (dismissing aiding and abetting fraud claim where defendants' alleged suspicions of wrongful

2  activity and subsequent internal investigation of an investment vehicle that turned out to be a

3  Ponzi scheme did not suffice as actual knowledge).

4          Finally, Wailea does not allege any knowledge specific to HSBC Bank USA, N.A.,

5  the defendant in this case, but instead lumps it in with other, unspecified HSBC entities as "the

6  HSBC Group."  To satisfy Rule 9(b), Wailea must allege conduct specific to HSBC Bank USA,

7  N.A., and not some undefined "HSBC Group."  *See Polar Int'l Brokerage Corp. v. Reeve*, 108 F.

8  Supp. 2d 225, 236-37 (S.D.N.Y. 2000).  Wailea has failed to do so here.[12]

9

10     **F.      WAILEA FAILS TO STATE A CLAIM UNDER**
          **THE CALIFORNIA CORPORATIONS CODE**

11          In its Fifth Cause of Action, Wailea alleges that HSBC violated California

12  Corporations Code Section 25401 by making materially false and misleading statements about

13  Senator's investment strategy.  Section 25401 prohibits securities transactions involving an

14  "untrue statement of a material fact or [omissions of] a material fact necessary in order to make

15  the statements made, in the light of the circumstances under which they were made, not

16  misleading."[13]  Wailea alleges that HSBC made "materially misleading statements and omissions"

17  of two types:  (1) verbal and written representations that Senator had historically been invested

18  and would be invested pursuant to the split-strike strategy; and (2) month-end summary valuations

19  that misstated the net asset value of Wailea's investments.  Compl. ¶ 63.

20  _____

21  [12]   Wailea makes much of certain allegations in an amended complaint filed against over a dozen

22  HSBC entities by Irving Picard, the BLMIS Trustee.  The core of the Trustee's amended
    complaint involved grossly overreaching common law claims that have been dismissed for lack of

23  standing by the United States District Court for the Southern District of New York, following a
    withdrawal of the reference from the Bankruptcy Court, leaving only ordinary bankruptcy law

24  claims in the case.  *See Picard v. HSBC Bank plc*, --- B.R. ----, 2011 WL 3200298 (S.D.N.Y. July
    28, 2011).  In any event, the Trustee's allegations cited by Wailea suffer from the same defects as

25  Wailea's own allegations – they are vague, conclusory, and not defendant-specific.

26  [13]   For purposes of this motion, HSBC assumes, but does not concede, that the swap transaction

27  constituted the purchase of a security in California, and therefore falls within the scope of Section
    25401.

28

19.

1  Wailea's Section 25401 claim fails for two reasons.  First, it is barred by the

2 applicable statute of limitations, because Wailea knew no later than March 12, 2009, that Madoff

3 did not manage Senator's assets pursuant to the split-strike strategy, and therefore that any alleged

4 prior representations by HSBC about Senator's investment strategy had been incorrect.  Second,

5 Wailea fails to state a claim under Section 25401 because, at the time of contracting, it agreed that

6 HSBC had made no representations about Senator.

7    **1.  Wailea's Section 25401 Claim Is Time-Barred**

8  A claim under Section 25401 must be brought within the earlier of five years after

9 the act constituting the violation, or two years of the discovery of facts constituting the violation.

10 Cal. Corp. Code § 25506(b).[14]  The two-year discovery period is triggered by actual notice or

11 inquiry notice, meaning the statute will commence when the plaintiff has reason to suspect that the

12 defendant has made misrepresentations connected to the purchase of a security.  *See Deveny v.*

13 *Entropin, Inc.*, 139 Cal. App. 4th 408, 422-23, 428-29 (2006).

14  A plaintiff has inquiry notice of securities fraud "when circumstances [would]

15 suggest to an investor of ordinary intelligence the possibility that he has been defrauded."  *Id.* at

16 428 (citation omitted).  Courts refer to these circumstances as "storm warnings," and they may

17 include "any financial, legal, or other data, such as public disclosures in the media about the

18 financial condition of the corporation that would tend to alert a reasonable person to the likelihood

19 of fraud."  *Id.* (internal quotation marks and citation omitted).  "Inquiry notice may also be

20 triggered by the suspension of trading in the issuer's stock, public reports of federal or state

21 investigations of the registrant, notice that the issuer has filed for reorganization or bankruptcy, a

22

---

23 [14] A statute of limitations defense may be raised by a Rule 12(b)(6) motion when the statute's

24 running is apparent on the face of the complaint.  *See Huynh v. Chase Manhattan Bank*, 465 F.3d
 992, 997 (9th Cir. 2006).  In reviewing a motion to dismiss, a court may take judicial notice of

25 "media reports, state court complaints, and regulatory filings" to determine whether a plaintiff was
 on inquiry notice of a potential securities claim.  *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d

26 406, 424-25 (2d Cir. 2008).  *See also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984

27 n.13, 986 (9th Cir. 1999) (observing that a court can consider complaints in other actions and
 regulatory filings in connection with a motion to dismiss).

28

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

sharp decline in stock value, or public disclosure of the adverse financial condition of the issuer." *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d 1106, 1114 (C.D. Cal. 2003).  When it is apparent that an investor has ignored storm warnings, knowledge of the existence of the securities claim will be imputed to the investor as of the time of the warnings, and a claim will be time-barred if not brought within the appropriate statute of limitations.  *Deveny*, 139 Cal. App. 4th at 428.

In this case, Wailea's Complaint establishes that it knew or had reason to suspect that the representations alleged to have been made by HSBC about Senator's investment strategy were incorrect no later than March 12, 2009, when Madoff pled guilty to federal felony charges and publicly acknowledged that "he never invested any of his advisory clients' funds pursuant to his claimed 'split strike conversation strategy.'"  Compl. ¶ 30.  Because Wailea filed its Complaint on July 19, 2011 – more than two years after it learned that Madoff was not investing Senator's capital at all, and therefore obviously not investing in the manner purportedly represented by HSBC and believed by Wailea – its claim is time-barred as a matter of law.

Wailea can hardly suggest it was unaware of the events surrounding Madoff and Senator.  Its Complaint exhaustively details the very public record of Madoff's arrest, admission of fraud, and the subsequent suspension of Senator due to the fraud.[15]  Compl. ¶¶ 27-30.  The events surrounding Madoff were covered widely in newspapers, on television, and online, and this Court may take judicial notice of the publicity surrounding Madoff to conclude that Wailea was on inquiry notice of Madoff's fraud and the impact of that fraud on Senator.  *See Staehr*, 547 F.3d at 425; HSBC's Request for Judicial Notice, Exhs. A-E.  Because Wailea had undisputed notice that Senator was materially impacted by Madoff's fraud, it necessarily knew (or had reason to know), immediately following Madoff's arrest, that any prior representations about Senator were likely incorrect.  Such constructive notice of falsity of the claimed misrepresentation triggers the statute of limitations on a securities cause of action.  *See Mary Pickford Co. v. Bayly Bros., Inc.*, 12 Cal.

---

[15]  Wailea, of course, knew that Senator had invested substantially all of its assets with BLMIS before it even entered into the Swap Agreement at issue here.  Compl. ¶ 14.

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

2d 501, 525-26 (1939) (claim for false representation on sale of security accrues when plaintiff "discovers its falsity") (construing predecessor Corporate Securities Act).  *See also Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1369 (9th Cir. 1978) (statute of limitation runs on misrepresentation claim in securities arena when there is "some discovery of the falsity of those representations").

Notwithstanding these admitted and undisputed facts, Wailea vaguely asserts that it did not learn that HSBC "may have engaged in wrongdoing with respect to Senator" until December 5, 2010, when the BLMIS Trustee filed his amended complaint.  Compl. ¶ 42.  But "wrongdoing" is not the gravamen (or even an element) of Wailea's misrepresentation claim under Section 25401, which requires only that the defendant made an untrue statement of material fact (or a material omission) in connection with the sale of a security.  It does not require reliance, wrongdoing, negligence, or intent.  *See I-Enterprise Co., LLC v. Draper Fisher Jurvetson Mgmt. Co. V., LLC*, No. C-03-1561 (MMC), 2005 WL 3590984, at *27 (N.D. Cal. Dec. 30, 2005); *Bowden v. Robinson*, 67 Cal. App. 3d 705, 715 (1977); 1 Marsh & Volk, *Practice Under the California Securities Laws* (2011) § 14.03[3][a] & [6].  Further, a plaintiff is on notice of a claim not when he is "in a position to present evidence which will . . . make liability a legal certainty," but when he discovers or reasonably should have discovered the factual basis of a claim.  *See Intermedics v. Ventritex, Inc.*, 822 F. Supp. 634, 641-42 (N.D. Cal. 1993); *Davies v. Krasna*, 14 Cal. 3d 502, 514 (1975).  Here, Wailea had reason to know that any alleged prior HSBC representations about Senator's investments were untrue as early as December 11, 2008, the day Madoff was arrested, but certainly no later than March 12, 2009, when Madoff admitted he had never invested pursuant to the split-strike strategy.  Because Wailea was on inquiry notice of the potential misrepresentations more than two years before it filed its Complaint, its claim is time-barred as a matter of law.

2.     **Wailea Cannot Point To Any Representations Subject To Section 25401**

Even if Wailea's Section 25401 claim is not barred by the statute of limitations, it fails to properly state that claim, because by the express terms of the Swap Agreement, HSBC did not make any material representations about Senator – a necessary element of a Section 25401

22.

1   claim.

2       According to the Complaint, HSBC "represented" that Senator had historically

3   been invested pursuant to the split-strike strategy and had not breached HSBC's Investment

4   Guidelines.  Compl. ¶¶ 17, 32, 63(a).  HSBC also allegedly failed to disclose material information

5   about BLMIS contained in a 2006 KPMG report.  *Id.* ¶ 33.  Wailea's Complaint also obliquely

6   references various representations made by Senator itself, *id.* ¶¶ 14-16, 18, and month-end

7   valuation reports prepared by HSBC, *id.* ¶¶ 25, 63(b).

8       None of these is an actionable representation.  All have either been disclaimed by

9   the Swap Agreement itself, or are not cognizable under Section 25401.  In particular, Wailea

10  expressly agreed that HSBC had not made any representations whatsoever about Senator, Swap

11  Agreement ¶ 12(g), that HSBC was not responsible for any statements made by Senator, *id.*, that

12  Wailea had the sole responsibility to investigate Senator, *id.* ¶ 12(f), and that HSBC had no

13  obligation to disclose any material information about Senator, even if not known publicly or not

14  known to Wailea, *id.* ¶ 20(b).

15      This language is clear and unassailable and precludes Wailea from now alleging

16  that HSBC made representations (or omissions) about Senator, because that would directly

17  contradict the bargained-for language of the Swap Agreement.  Wailea cannot now escape the

18  consequences of the terms it expressly agreed to.  *See Paracor Fin., Inc. v. Gen. Elec. Capital*

19  *Corp.*, 96 F.3d 1151, 1159 (9th Cir. 1996).  *See also Bank of the West v. Valley Nat'l Bank*, 41

20  F.3d 471, 477-78 (9th Cir. 1994) (holding that the "plain and strong words" of a disclaimer of

21  representation defeats fraud claim because "regardless of what they actually did, the [parties]

22  expressly agreed to a relationship in which each would investigate independently and exercise

23  independent judgment.  There was no lack of clarity in the contract, no mutual mistake, no reason

24  to suppose that the parties mutually intended any relationship other than what the contract said.").

25      The other purported actionable representations that Wailea references – statements

26  by Senator and statements in HSBC's month-end valuation reports – are similarly unavailing.

27  Wailea cannot rely on the statements made by Senator itself to state a Section 25401 claim,

28  because that claim requires privity between the plaintiff and defendant.  *See Viterbi v. Wasserman*,

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)

191 Cal. App. 4th 927, 937-40 (2011); *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 252-254 (2007).  There is no suggestion here that Wailea had a contractual or fiduciary relationship with Senator.  Finally, Wailea fails to state a claim under Section 25401 based on the statements in the month-end valuations, because those valuations are not "offers" to buy or sell securities under the statute – they are merely reports of information detailing transactions that have already occurred.  Cal. Corp. Code § 25017(b).

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, HSBC respectfully requests that this Court dismiss Wailea's complaint in its entirety, without leave to amend.


Dated: September 19, 2011                         Respectfully submitted,

                                                                    TAYLOR & COMPANY LAW OFFICES, LLP



                                                                    By:   _____/s/ *Jonathan A. Patchen*_____
                                                                             Jonathan A. Patchen
                                                                    Attorneys for Defendant HSBC BANK USA, N.A.

DEFENDANT HSBC BANK USA, N.A.'S MOTION TO DISMISS: CASE NO. CV-11-3544 (SC)