United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAILEA PARTNERS, LP,                )  Case No. 11-CV-3544 SC
a Delaware limited partnership,     )
                                    )  ORDER GRANTING DEFENDANT'S
            Plaintiff,              )  MOTION TO DISMISS
                                    )
v.                                  )
                                    )
HSBC BANK USA, N.A.,                )
a national banking association,     )
                                    )
            Defendant.              )
                                    )
_____)

## I.   **INTRODUCTION**

In this action, Plaintiff Wailea Partners, LP ("Plaintiff" or "Wailea") seeks rescission of an investment contract entered into with Defendant HSBC Bank, USA, N.A. ("Defendant" or "HSBC USA"). See ECF No. 1 ("Compl."). Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. ECF No. 23 ("Mot."). The Motion is fully briefed. ECF Nos. 35 ("Opp'n), 40 ("Reply").

## II.  **BACKGROUND**

As it must on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the veracity of Plaintiff's well-pleaded factual allegations. Wailea is an investment fund organized as a Delaware limited partnership. Compl. ¶¶ 1, 7. The majority of Wailea's investors are based in northern California, and these California-based investors contributed more than eighty

**United States District Court**
For the Northern District of California

1   percent of Wailea's capital.  Id. ¶ 7.  HSBC USA is the U.S.

2   affiliate of an international banking company, and is a member of

3   HSBC Group, a worldwide organization of banks and financial

4   services companies parented by HSBC Holdings plc.  Id. ¶ 8.

5       Wailea's investment objective was to achieve long-term capital

6   appreciation by investing in structured financial products linked

7   to the performance of hedge funds -- specifically, hedge funds that

8   utilize a particular risk-minimizing trading strategy known as the

9   "split-strike conversion" ("SSC") strategy.  Id. ¶ 1.  In and prior

10  to 2007, HSBC USA offered a variety of different structured

11  investment contracts linked to the performance of hedge funds using

12  the SSC strategy, including "total return swap contracts."  Id. at

13  ¶¶ 10-11.  A "swap" is a financial transaction created to swap the

14  value and cash flows of an asset or group of assets for the value

15  and cash flows of a different asset.  Id. ¶ 11.  HSBC USA swap

16  contracts offered counterparties the prospect of achieving the

17  return, or multiples of the return, generated by a reference asset

18  -- here, a hedge fund -- without having to own the asset itself.

19  Id.

20      In May 2007, Wailea and HSBC USA began negotiating the terms

21  of a swap contract to be linked to the performance of an investment

22  portfolio run by a mutual fund company named Senator Fund SPC

23  ("Senator").  Id. ¶ 13.  The parties decided that a fund called the

24  Senator Equity Segregated Portfolio One (the "Senator Fund") was a

25  suitable reference fund because substantially all of the Senator

26  Fund's Capital was deposited with Bernard L. Madoff Investment

27  Securities LLC ("BLMIS") to be managed using the SSC strategy.  Id.

28  ¶ 14.  As stated in Senator's July 2006 Offering Memorandum for the

1  Senator Fund (the "2006 Senator Fund OM"), "substantially all of
2  the Fund's Portfolio One assets are managed by one Manager, who
3  utilizes a 'split-strike conversion strategy[.]'"  Id. ¶ 14.

4      According to Wailea, "investment of Senator Fund's capital in
5  accordance with the SSC Strategy was an essential, core condition
6  of the parties' proposed swap transaction."  Id. ¶ 15.  Both Wailea
7  and HSBC USA demanded and received assurances from Senator that the
8  Senator Fund's capital would continuously be invested using the SSC
9  strategy.  According to Wailea, "[t]he parties . . . conditioned
10 their own contractual rights and duties on the requirement that
11 Senator Fund would invest its capital in accordance with the
12 specified SSC Strategy."  Id.

13     On July 10, 2007, HSBC USA sent Wailea and Senator a copy of
14 its portfolio guidelines for swaps and other investment products
15 (the "HSBC Investment Guidelines") and requested assurances from
16 Senator that these guidelines would be followed if HSBC USA and
17 Wailea were to enter into a swap contract linked to the Senator
18 Fund.  Id. ¶ 17.  The HSBC Investment Guidelines included the
19 following terms and conditions: "[t]he Reference Fund will invest
20 substantially all of its assets in a managed account . . . at all
21 times during the term of this Transaction," and "[t]he Investment
22 Manager will use a split-strike conversion strategy."  Id.  They
23 further provided that "[t]he Reference Fund will only invest in (1)
24 stocks in the S&P 100 index, (2) option on S&P 100 index, and/or
25 (3) Money Market/US Treasury Bills."  Id.

26     On July 12, 2007, Senator sent Wailea a letter "confirm[ing]
27 that Senator is fully invested (with the exception of cash reserves
28 kept for payment of expenses) in the 'split-strike' hedged equity

**United States District Court**
For the Northern District of California

1   strategy[.]"   <u>Id.</u> ¶ 18.

2       On September 4, 2007, Wailea and HSBC USA entered into a swap

3   agreement linked to the performance of the Senator Fund.   <u>Id.</u> ¶ 19.

4   The terms of the contract were set forth in a document entitled

5   Share Swap Transaction Confirmation (the "Swap Agreement").   A copy

6   of the Swap Agreement is attached to the Complaint.   Compl. Ex. 1

7   ("Swap Agreement").[1]   Section 7 of the Agreement, labeled

8   "Investment Guidelines" refers the reader to "Annex II," which

9   contains the same language set forth in the HSBC Investment

10  Guidelines quoted above, namely:

11          The [Senator] Fund will invest substantially all of its
            assets in a managed account . . . at all times during the
12          term of this Transaction. The Investment Manager will use
            a split-strike conversion strategy.
13
            The [Senator] Fund will only invest in (1) stocks in the
14          S&P 100 index, (2) option on S&P 100 index, and/or (3)
            Money Market/US Treasury Bills.
15

16  Swap Agreement, Annex II.

17      The Swap Agreement incorporates by reference the terms of the

18  1992 version of the Master Agreement of the International Swap

19  Dealers Association, Inc. ("ISDA Master Agreement") as well as

20  definitions contained in the 2000 ISDA Definitions and the 2002

21  ISDA Equity Derivatives Definitions.   <u>Id.</u> at 1.

22      Pursuant to the terms of the Swap Agreement, Wailea paid HSBC

23  _____

24  [1] In ruling on a motion to dismiss, a court is generally limited to
    the allegations of the complaint. <u>Arpin v. Santa Clara Valley</u>
25  <u>Transp. Agency</u>, 261 F.3d 912, 925 (9th Cir. 2001). However, the
    Court may consider documents attached to the complaint, documents
26  upon which the complaint relies, and documents properly the subject
    of judicial notice. <u>Hal Roach Studios, Inc. v. Richard Feiner &</u>
27  <u>Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (documents attached
    to the complaint); <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir.
28  2006) (documents upon which the complaint relies); <u>MGIC Indem.</u>
    <u>Corp. v. Weisman</u>, 803 F.2d 500, 504 (1986) (judicial notice).

United States District Court
For the Northern District of California

USA $8,870,000 in collateral, and in return HSBC USA made a "synthetic investment" of $31 million in the Senator Fund on Wailea's behalf.  <u>Id.</u> ¶ 21.  Thus, in effect, HSBC USA provided financing for a leveraged investment by Wailea in the Senator Fund.

On November 2, 2007, Wailea and HSBC USA amended and restated the Swap Agreement as set forth in an Amended and Restated Share Swap Transaction Confirmation.  <u>Id.</u> ¶ 22.  The parties increased the "Maximum Notional Amount" from $31 million to $38 million, meaning that Wailea could increase its synthetic investment in the Senator Fund up to $38 million if it chose to do so.  <u>Id.</u>  On July 18, 2008, Wailea and HSBC USA once again amended and restated their agreement, as reflected in a Third Amended and Restated Share Swap Transaction Confirmation.[2]  The parties again increased the "Maximum Notional Amount," this time to $39 million.  <u>Id.</u> ¶ 23. The provisions of Annex II and all disclaimer provisions in the original version of the Swap Agreement appear in identical form in the amended and restated versions.  <u>See</u> <u>id.</u> Exs. 1-3.

Between October 2007 and December 2008, Wailea periodically adjusted the amount of collateral it provided to HSBC USA, which had the effect of adjusting the amount of Wailea's synthetic investment in the Senator Fund.  <u>Id.</u> ¶ 24.  In total, Wailea transferred $15,970,000 in collateral to HSBC USA.  <u>Id.</u>

Each month from October 2007 through December 2008, HSBC USA sent Wailea a Month-end Valuation Report that purportedly stated: (1) the net asset value of individual units of the Senator Fund;

---

[2] For the sake of clarification, the Court notes that the parties do not mention the existence of any second amended swap agreement. Rather, it appears that the document entitled Third Amended and Restated Share Swap Transaction Agreement was in fact only the second amendment and restatement of the initial agreement.

**United States District Court**
For the Northern District of California

(2) the net asset value of Wailea's swap investment for the previous month; and (3) the amount of accrued interest Wailea owed HSBC USA. Id. ¶ 25. Wailea alleges that each additional transfer of collateral it made to HSBC USA was predicated on its belief that the values reported in the Month-end Valuation Reports were accurate, and but for the Month-end Valuation Reports, Wailea would not have transferred any additional collateral to HSBC USA. Id. ¶ 26.

On December 11, 2008, Bernard Madoff ("Madoff") was arrested by federal agents for operating a Ponzi scheme through BLMIS's investment advisory business. Id. ¶ 27. Madoff was the investment "Manager" described in the 2006 Senator Fund OM. Id. He subsequently pled guilty and acknowledged that he never invested any of his clients' funds pursuant to the SSC strategy. Def.'s RJN Ex. 6 ("Madoff Plea Hrg. Tr.") at 26:16-18.[3]

After Madoff's arrest, on December 15, 2008, the District Court for the Southern District of New York granted an order placing all BLMIS accounts, including the Senator Fund, under the protections of the Securities Investor Protection Act and appointed Irving Picard ("Picard") as trustee for liquidation of BLMIS

---

[3] HSBC USA requests judicial notice of the transcript of Madoff's plea hearing and five news articles pertaining to Madoff's fraud. ECF No. 25 ("Def.'s RJN"). Under Rule 201, courts may take judicial notice of facts contained in public records that are not subject to reasonable dispute. Lee v. City of Los Angeles, 250 F.3d 668, 689-690 (9th Cir. 2001). Accordingly, the Court takes judicial notice of Madoff's plea hearing transcript and its contents. Courts may also take judicial notice of publications introduced to indicate what was in the public realm at the time but may not take judicial notice of whether the contents of those articles are in fact true. Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010). Accordingly, the Court takes judicial notice of the news articles solely as an indication of what information was in the public realm at the time.

**United States District Court**
For the Northern District of California

1   accounts.   Id.   ¶ 29.   The same day, Senator sent a letter to its

2   shareholders suspending the issue and redemption of shares until

3   further notice.   Id.

4      Wailea alleges that HSBC USA had suspected Madoff's

5   involvement in fraud as early as 2005 and hid this information from

6   Wailea.   Around September 2005, HSBC Group hired the auditing firm

7   KPMG to conduct a due diligence review of BLMIS for "fraud and

8   related operational risk."   Id. ¶ 33.   KPMG released its report in

9   February 2006, noting several risks of fraud with respect to the

10   investment of BLMIS clients' money, including failure to segregate

11   client funds from BLMIS funds and use of client funds to make

12   trades that deviated from the SSC strategy.   Id.   Around March

13   2008, HSBC Group hired KPMG to perform a second review of BLMIS,

14   which yielded a report noting the same fraud risks as the 2006

15   report, as well as risks of falsification of client mandates,

16   embezzlement of client funds, and diversion of client funds for

17   Madoff's personal gain.   Id. ¶¶ 34-35.

18      As KPMG was completing its 2008 diligence review of BLMIS, and

19   during the months after the report was issued, "HSBC Group

20   affiliates began a massive liquidation of their global investments

21   in BLMIS hedge-fund clients."   Id. ¶ 38.   During the ninety days

22   immediately preceding Madoff's arrest, HSBC USA and its affiliates

23   allegedly redeemed more than $400 million invested in BLMIS hedge-

24   fund clients and liquidated substantially all of their holdings in

25   the Senator Fund.   Id. ¶¶ 38-39.   When Wailea inquired about HSBC

26   Group's liquidation efforts, HSBC USA told Wailea "that there was

27   no reason for concern and that the redemptions were made for

28   'market reasons.'"   Id.   HSBC USA did not disclose any of the

contents of the KPMG reports.

On December 5, 2010, Picard, trustee for the liquidation of BLMIS, filed suit against several HSBC Group affiliates, including HSBC USA, alleging that they "enabled Madoff's Ponzi scheme by encouraging investment into an international network of feeder funds . . . in order to reap an extraordinary financial windfall." Id. ¶ 41.  Wailea alleges that it was not until the filing of the Picard suit that Wailea discovered that: (1) HSBC USA lacked a good faith basis for believing Madoff was complying with the SSC strategy with respect to BLMIS's investment of the Senator Fund's capital; and (2) HSBC USA itself may have engaged in wrongdoing with respect to the Senator Fund.  Id. ¶ 42.

Wailea filed this action on July 19, 2011, seeking rescission of the Swap Agreement and return of the approximately $15,970,000 in collateral that Wailea transferred to HSBC USA.  See Compl. Wailea asserts the following five claims for rescission: (1) mutual mistake, alleging that Wailea and HSBC USA were mutually  mistaken in their belief that the Senator Fund's capital would be invested pursuant to the SSC strategy; (2) unilateral mistake, alleging that Wailea was unilaterally mistaken about the belief that the Senator Fund was following an SSC investment strategy; (3) innocent misrepresentation, alleging that HSBC USA made various misrepresentations concerning the SSC strategy and the value of Wailea's investment; (4) failure of condition precedent, alleging that investment of the Senator Fund's capital pursuant to the SSC strategy was an express condition of the formation of the Swap Agreement that never occurred; and (5) violation of California Corporations Code §§ 25401 et seq., alleging that HSBC USA made

misleading statements and omissions in connection with the sale of securities.  See id. ¶¶ 43-64.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint need not contain "detailed factual allegations," but it must provide more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 1949.  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Thus, a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to . . . nudge[] [its] claims across the line from conceivable to plausible."  Id. at 570.

**United States District Court**
For the Northern District of California

IV.   **DISCUSSION**

    A.    **Choice of Law**

    As an initial matter, HSBC USA argues that Wailea's first four claims are governed by New York law because the Swap Agreement contains a valid and enforceable choice of law clause specifying that New York law shall govern the Agreement.  Mot. at 5-6 (citing Swap Agreement at 1 ("the governing law is the law of the State of New York, without reference to choice of law doctrine.")).[4]  Wailea argues that the clause does not control because Wailea seeks to rescind, rather than enforce, the Swap Agreement.  For the following reasons, the Court agrees with HSBC USA and applies New York law to Wailea's first four claims.

    A district court sitting in diversity applies the choice of law rules of the state in which it sits.  Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005).  California choice of law rules therefore govern the Court's determination of which state's law to apply to Plaintiff's claims.  California law strongly favors the application of contractual choice of law clauses.  Wash. Mut. Bank, FA v. Super. Ct., 24 Cal. 4th 906, 917 (Cal. 2001). California courts will apply the parties' contractually chosen law if: (1) the designated state has a substantial relationship to the parties or the transaction, and (2) the chosen law would not contravene a fundamental policy of California.  Id. at 916.

    Where, as here, one of the parties has its principal place of

---

[4] Nearly all provisions of the Swap Agreement remain unchanged in the amended and restated versions of the agreement.  Therefore, when citing provisions that are identical in all three versions, the Court refers simply to the "Swap Agreement."

business in the designated state,[5] the substantial relationship test is met.  Expansion Pointe Props. Ltd. P'ship v. Procopio, Cory, Hargreaves & Savitch, LLP, 152 Cal. App. 4th 42, 59 (Cal. Ct. App. 2007).  Moreover, because there is no significant difference between California and New York law on rescission claims, applying New York contract law in this case does not undermine the public policy of California.  See Peterson v. Highland Music, Inc., No. CV 93-4672 (WDK), 1995 U.S. Dist. LEXIS 22008, at *7 (C.D. Cal. June 20, 1995).

Finally, under California's choice-of-law rules, a valid choice-of-law clause encompasses all claims arising from or related to an agreement -- even claims seeking to rescind the agreement. Seidman & Seidman v. Wolfson, 50 Cal. App. 3d 826, 830-31 (Cal. 1975).  Seidman disposes of Wailea's argument that the choice-of-law clause does not apply here because Wailea disputes the very formation of the contract and "whether a contract was formed in the first place . . . precedes the question whether the Court may enforce its terms."  Opp'n at 5 n.5.  Like Wailea, the plaintiff in Seidman sought to rescind a contract containing a choice-of-law clause on the basis of mistake and misrepresentation.  The court held that the choice-of-law clause was valid and enforceable absent a contention by the plaintiff that "the inclusion of the choice of law clause itself was obtained by misrepresentation or mistake." Id. at 831.  Wailea does not contend that the choice-of-law clause itself was included in the Agreement because of mistake or misrepresentation, and therefore, the clause is valid and

United States District Court
For the Northern District of California

---

[5] Wailea alleges, and HSBC USA admits, that HSBC USA's principal place of business is located in New York.  Compl. ¶ 8; Mot. at 6.

11

1   enforceable under <u>Seidman</u>.

2   **B.   <u>Claims for Mutual and Unilateral Mistake</u>**

3   HSBC USA argues that Wailea's claims for mutual and unilateral

4   mistake fail as a matter of law because Wailea expressly assumed

5   the risk of the alleged mistake under the plain language of the

6   Swap Agreement.  Mot. at 10.  Wailea responds that, although it did

7   assume certain specified risks under the terms of the Swap

8   Agreement, it did not assume the risk that the Senator Fund's

9   capital would not be invested pursuant to the SSC strategy.  Opp'n

10  at 21.[6]  For the following reasons, the Court agrees with HSBC USA.

11  Under New York law, a mistake of material fact is not grounds

12  for rescission of a contract if the party seeking rescission bears

13  the risk of mistake.  <u>Albert Elia Bldg. Co., Inc. v. Am. Sterilizer</u>

14  <u>Co.</u>, 622 F.2d 655, 656-57 (2d. Cir. 1980).  A party will be held to

15  bear the risk of mistake if: (1) the risk is so allocated by

16  agreement of the parties; (2) at the time the contract is made, the

17  party has only limited knowledge with respect to the facts relating

18  to the mistake, but the party treats that knowledge as sufficient;

19  or (3) the risk is allocated to that party by terms supplied by the

20  court on the ground that it is reasonable under the circumstances

21  to do so.  <u>Id.</u>  HSBC USA argues that all three circumstances apply

22  here.  Mot. at 9.  The Court agrees that the first two

23  circumstances apply here and accordingly finds that Wailea assumed

24  the risk mistake as to the Senator Fund's investment strategy.

___

25  [6] Wailea also responds by repeatedly emphasizing that the Senator
26  Fund's use of the SSC strategy was an absolutely essential pre-
    condition to formation of the Swap Agreement.  <u>Id.</u> at 20-21.
27  Because this argument is a reiteration of Wailea's failure of
    condition precedent claim, the Court addresses it when discussing
28  that claim below.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

First, the Swap Agreement consistently and unambiguously allocates to Wailea the risk of mistake as to the Senator Fund's performance, which alone suffices to defeat Wailea's claims for rescission based on a mistake with respect to the Senator Fund. See Beecher v. Able, 575 F.2d 1010, 1015 (2d Cir. 1978) (holding that if "there is a term in a valid agreement that the risk as to the existence of an assumed state of facts is to be upon one of the contracting parties, there can be no rescission of the transaction for mistake as to such facts") (internal quotation omitted). Under the Section 12 of the Swap Agreement, Wailea affirmed that it understood and assumed the financial risks of "the Transaction":

> Each party has the capability to make its own legal, regulatory, tax, investment, financial, accounting and business evaluation of and to understand, and has evaluated and does understand on its own behalf, the terms, conditions and risks of entering into this Transaction and is willing to accept those terms and conditions and to assume (financially and otherwise) those risks.

Swap Agreement, § 12(b).  Wailea also agreed that HSBC would not be liable to it if the financial effects of "the Transaction" turned out differently than Wailea expected:

> Neither party or any affiliate thereof will bear any responsibility or liability if the legal, regulatory, tax, investment, financial, accounting, business or credit effects or consequences of this Transaction are other than those contemplated by the other party.

Id. § 12(c).

Wailea further agreed that it was "solely responsible for making an independent appraisal of[,] and investigation into[,] the financial condition, prospects, creditworthiness, status and business of [the Senator Fund]," id. § 12(f), and that Wailea was

**United States District Court**
For the Northern District of California

1  not relying on any representations or warranties made by HSBC USA

2  regarding the Senator Fund, <u>id.</u> §§ 12(d),(g).

3     Wailea concedes that it assumed "specified risks 'of entering

4  into this Transaction,'" but argues that it did not assume the risk

5  of the particular mistake alleged here.  Opp'n at 21 (quoting Swap

6  Agreement § 12(b)).  Wailea argues that "the term 'Transaction' is

7  defined to be a share swap transaction with certain

8  specifications," including the specification that the investment

9  manager of the Senator Fund would use the SSC strategy and would

10  only invest in certain low-risk assets.  <u>Id.</u>

11     The definition of the "Transaction" provided in the Swap

12  Agreement does not assist Wailea's argument.  <u>See</u> Swap Agreement

13  preamble (defining the "Transaction" simply as "the Share Swap

14  Transaction entered into between [HSBC USA] and [Wailea] on the

15  Trade Date specified below").  Moreover, in light of the language

16  in Sections 12(b)-(f) of the Agreement cited above, especially

17  section 12(f), Wailea's argument that the risks it assumed under

18  the Agreement did not include the risk that the Senator Fund would

19  not follow the SSC strategy is inconsistent with the plain meaning

20  of the Swap Agreement.

21     Second, even if the Swap Agreement did not allocate the risk

22  of the alleged mistake to Wailea, Wailea nevertheless assumed this

23  risk under the second prong set forth in <u>Albert Elia</u> because it

24  chose to treat the limited knowledge it had concerning the Senator

25  Fund as sufficient and disclaimed reliance on any representations

26  made by HSBC USA.  <u>See</u> 622 F.2d at 656-657.  Wailea alleges that it

27  was aware of, and concerned about, the risk that the Senator Fund

28  would not follow the SSC strategy.  Wailea alleges that it sought

repeated assurances about the Senator Fund's investment strategy
and was even able to persuade the Senator Fund to amend its
offering memorandum to describe its investment strategy more
clearly.  Compl. ¶¶ 15-18.  Nevertheless, despite its concerns,
Wailea agreed that it had read and received "all relevant documents
with respect to [the Senator Fund]," and that it "underst[ood] the
nature of making an investment in [the Senator Fund], and has
concluded that such an investment would be suitable for it in light
of its own investment objectives, financial capabilities, and
expertise."  Swap Agreement § 12(i).  Because Wailea elected to
treat whatever knowledge it had regarding the Senator Fund as
sufficient and expressly disclaimed reliance on any representations
made by HSBC, Swap Agreement §§ 12(d),(g), Wailea agreed to assume
the risk of mistake as to the Senator Fund's investment strategy.
See Beecher, 575 F.2d at 1015 ("[I]n determining whether rescission
is warranted in a given circumstance, there must be excluded from
consideration mistakes as to matters which the contracting parties
had in mind as possibilities and as to the existence of which they
took the risk.") (internal quotation omitted).

    Accordingly, the Court finds that Wailea assumed the risk that
the Senator Fund's assets would not be invested pursuant to the SSC
strategy, and the Court DISMISSES WITH PREJUDICE Wailea's first and
second claims for rescission due to mutual and unilateral mistake.

**C.   Innocent Misrepresentation Claim**

    A claim for rescission due to innocent misrepresentation under
New York law requires a plaintiff to "set forth the circumstances
in detail showing that a false material representation was made and
that [it] relied on the representation to [its] detriment," Albany

United States District Court
For the Northern District of California

15

**United States District Court**
For the Northern District of California

1  <u>Motor Inn  Rest., Inc. v. Watkins</u>, 85 A.D.2d 797, 798 (N.Y. App.

2  Div. 1981), and that its reliance was justified.  <u>Steen v. Bump</u>,

3  A.D.2d. 583, 584 (N.Y. App. Div. 1996).

4      As the basis for its third claim, Wailea alleges that it

5  relied on two distinct sets of representations made by HSBC USA:

6  (1) oral and written representations that the Senator Fund had

7  historically followed the SSC strategy and would continue to do so;

8  and (2) representations in each Month-end Valuation Report that

9  misstated the value of Wailea's investment.  Compl. ¶¶ 51-55.

10  Wailea alleges that these representations induced it to enter into

11  the Swap Agreement and to deliver its initial collateral payment

12  and subsequent collateral payments.  <u>Id.</u> ¶ 55.

13      HSBC USA argues that disclaimer provisions in the Swap

14  Agreement and in the Month-end Valuation Reports preclude Wailea

15  from asserting that it justifiably relied on the alleged

16  misrepresentations.  Mot. at 14; Reply at 11-13.  Specifically,

17  with regard to any representations allegedly made <u>prior to</u> the

18  parties' final amendment and restatement of the Swap Agreement on

19  July 18, 2008, HSBC USA argues that Wailea disclaimed reliance on

20  such representations by repeatedly reaffirming Section 12 of the

21  Swap Agreement.  Mot. at 14 (citing Swap Agreement § 12(g)

22  ("Neither [HSBC USA or its affiliates] is making, and has not made,

23  in connection with this Transaction any representation or warranty

24  whatsoever as to the Reference Fund[.]"); <u>id.</u> § 12(d) ("Neither

25  party is relying on any communication (written or oral) from the

26  other party . . . as investment or other advice or as a

27  recommendation to enter into this Transaction[.]").  With regard to

28  any representations contained in Month-end Valuation Reports sent

**United States District Court**
For the Northern District of California

1  <u>after</u> the parties' final amendment and restatement of the

2  Agreement, HSBC USA argues that: (1) sections 12(f) and 20(b) of

3  the Agreement confer a continuing obligation upon Wailea to

4  evaluate the financial condition of the Senator Fund and provide

5  that HSBC USA had no duty to apprise Wailea of information in its

6  possession; and (2) disclaimer language contained in the Month-end

7  Valuation Reports themselves precludes any viable claim of

8  reliance.

9      In response, Wailea argues that the aforementioned disclaimers

10  do not defeat its claim because "the subject matter of the

11  misrepresentation -- investment of the [Senator] Fund's capital in

12  accordance with the SSC Strategy -- is not specifically

13  disclaimed."  Opp'n at 19.  Wailea also argues that neither

14  disclaimer defeats its claim because Section 3(a)(v) of the ISDA

15  Master Agreement provides that enforcement of the Swap Agreement is

16  "subject . . . to equitable principles of general application."

17  <u>Id.</u>; <u>see</u> Patchen Decl. Ex. A ("ISDA Master Agreement") § 3(a)(v).[7]

18      The Court agrees with HSBC USA and finds that Wailea cannot as

19  a matter of law establish that it reasonably relied upon the

20  alleged misrepresentations.  Sections 12(g) and 12(d), which Wailea

21  reaffirmed each time it agreed to amend and restate the Swap

22  Agreement, precludes any viable claim of reliance on

23  representations made by HSBC USA prior to July 18, 2011 -- the date

24

25  [7] Jonathan A. Patchen ("Patchen"), attorney for Defendant, filed a
    declaration in support of the Motion.  ECF No. 24 ("Patchen
26  Decl.").  The Court properly takes judicial notice of the ISDA
    Master Agreement, which both parties quote from in their briefs,
27  because the Plaintiff's claims depend on the contents of the
    document and the parties do not dispute its authenticity.  <u>See</u>
28  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005).

**United States District Court**
For the Northern District of California

1   on which the parties executed their final amendment and restatement

2   of the Agreement.   Wailea's argument that the disclaimers do not

3   specifically address the Senator Fund's failure to follow the SSC

4   strategy fails because, although a vague "omnibus statement"

5   disclaiming representations will not preclude a claim for

6   misrepresentation, when a contract disclaims "reliance on specified

7   representations," a party will not be allowed to assert that it

8   relied on those specified representations.   See CDO Plus Master

9   Fund v. Wachovia Bank, N.A., No. 07-Civ-11078(LTS)(AJP), 2009 U.S.

10  Dist. LEXIS 59540, at *10-11 (S.D.N.Y. July 13, 2009).   " The

11  disclaimer does not have to identify precisely the alleged

12  misrepresentation, but the disclaimer must track the substance of

13  the misrepresentation."   Id. at *11.   Courts are more inclined to

14  enforce a disclaimer clause where, as here, the clause is the

15  product of negotiations between "sophisticated business people."

16  Id.

17      Here, the Swap Agreement specifically disclaims

18  representations relating to the Senator Fund and provides that

19  Wailea is solely responsible for making an independent appraisal of

20  the financial condition and business of the Senator Fund.   Swap

21  Agreement §§ 12(f),(g).   These disclaimers adequately "track the

22  substance" of the misrepresentations Wailea alleges.   Accordingly,

23  they preclude a viable claim for reliance on any misrepresentations

24  allegedly made prior to the parties' final amendment and

25  restatement of the Swap Agreement.   See CDO Plus, 2009 U.S. Dist.

26  LEXIS 59540, at *11-12 (holding that similar disclaimer in an ISDA-

27  based swap agreement precluded hedge fund's claim of reliance on

28  bank's alleged misrepresentations); Republic Nat'l Bank v. Hales,

18

1   75 F. Supp. 2d 300, 316 (S.D.N.Y. 1999) (same).

2       Both the Swap Agreement and the Month-end Valuation Reports

3   also preclude any viable claim of reliance on alleged

4   misrepresentations contained in Month-end Valuation Reports that

5   were issued subsequent to the final amendment and restatement of

6   the Swap Agreement.  Section 12(f) of the Agreement provides that

7   Wailea "will at all times continue to be" solely responsible for

8   making an independent appraisal of the Senator Fund's financial

9   condition.  Section 20(b) of the Agreement provides that HSBC USA

10  may be in possession of material, non-public information relating

11  to the Senator Fund but shall be under no obligation to disclose

12  such information to Wailea.  Additionally, the Month-end Valuation

13  Reports contain a disclaimer providing that they are for

14  "informational purposes only" and stating that "HSBC USA expressly

15  disclaims . . . responsibility for any loss or damage arising out

16  of the provision or use of this information[.]"  Patchen Decl. Ex.

17  D ("Oct. 31, 2008 Valuation Report") at 4.[8]  In light of these

18  clear and specific disclaimers, Wailea cannot, as a matter of law,

19  establish reasonable reliance in connection with its innocent

20  misrepresentation claim.

21      Lastly, Wailea's bare assertion that the disclaimer provisions

22  _____

23  [8] The Court may properly take judicial notice of the October 31,
    2008 Valuation Report because the Complaint expressly relies on

24  such reports and the parties do not dispute its authenticity.  See
    Knievel, 393 F.3d at 1076 (9th Cir. 2005).  Wailea does not oppose

25  judicial notice of the report, but states that the report is not
    exemplary of all such reports.  ECF No. 34 ("Pl.'s Resp. to Def.'s'

26  RJN") at 2.  Plaintiff therefore asks the Court to take judicial
    notice of a Month-end Valuation Report dated December 10, 2008.

27  Id.  However, the December 10, 2008 Report contains nearly
    identical disclaimer provisions.  See id. Ex. A ("December 10,

28  2008") at 3.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   of the Swap Agreement do not bar its claim because enforcement of

2   the Swap Agreement is "subject . . . to equitable principles of

3   general application" does not salvage its claim.  Wailea does not

4   explain how this language relieves it of having to establish the

5   elements of a proper innocent misrepresentation claim.  As HSBC USA

6   notes, equitable principles of general application do not convert

7   invalid claims into valid ones.  Reply at 5.

8       Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiff's

9   third claim for innocent misrepresentation.

10      **D.    Claim for Failure of Condition Precedent**

11      In its fourth claim, Wailea seeks to rescind the Agreement on

12  the grounds that a condition precedent to the Agreement -- namely,

13  that the Senator Fund would invest its assets pursuant to the SSC

14  strategy -- failed to occur.  Compl. ¶¶ 56-60.  HSBC USA argues

15  that the Senator Fund's following a particular investment strategy

16  was not, as a matter of law, a condition precedent to the

17  agreement.  The Court agrees.

18      "Conditions are not favored under New York law, and in the

19  absence of unambiguous language, a condition will not be read into

20  [an] agreement." Ginett v. Computer Task Grp., Inc., 962 F.2d

21  1085, 1099-1100 (2d Cir. 1992).  To obtain rescission based on a

22  failure of condition, Wailea must point to express language on the

23  face of the Swap Agreement that establishes the parties'

24  unambiguous intent to condition the Swap Agreement's formation on

25  the Senator Fund's capital being invested pursuant to the SSC

26  strategy.  See Rest. Creative Concepts Mgmt., LLC v. Ne. Rest.

27  Dev., LLC, 83 A.D.3d 1189, 1191 (N.Y. App. Div. 2011) (holding that

28  contract terms did not create a condition precedent to formation

because they lacked "unmistakable language of condition").

Here, Wailea claims that Section 7 and Annex II set forth the following "express and explicit conditions" to the Agreement:

> The [Senator] Fund will invest substantially all of its assets in a managed account (the "Managed Account") at all times during the term of this Transaction. The Investment Manager will use a split-strike conversion strategy.

> The [Senator] Fund will only invest in (1) stocks in the S&P 100 index, (2) option on S&P 100 index, and/or (3) Money Market/US Treasury Bills.

Compl. ¶¶ 57-58. These provisions cannot be construed as conditions because they lack the "'unmistakable language of condition' such as 'if,' 'unless and until' and/or 'null and void,'" which would establish the parties' clear intent to expressly condition the existence of the Agreement upon the Senator Fund's investment strategy. Rest. Creative Concepts, 83 A.D.3d at 1191.[9]

Despite the allegations in the Complaint to the contrary, Wailea argues in its Opposition that it is not asking the Court to interpret any language contained in the written Swap Agreement as a condition precedent. Opp'n at 17. Instead, Wailea appears to argue that the parties agreed to an oral condition precedent as to the Senator Fund's investment strategy. Id. at 14-16. Nowhere in its Complaint does Wailea allege an oral condition precedent to contract formation.[10] Moreover, even if its Complaint were amended

---

[9] Wailea attempts to distinguish Rest. Creative Concepts on the ground that it dealt with a summary judgment motion rather than a motion to dismiss. Opp'n at 15. However, that distinction is irrelevant to the pure statement of law for which the case is cited here.

[10] Nor does Wailea even state in its Opposition that any such oral agreement was made. However, it relies heavily on case law addressing oral agreements precedent to formation.

1   to include such allegations, Wailea's claim would still fail as a

2   matter of law as explained below.

3        Wailea relies on numerous cases stating that parol testimony

4   may be used to prove a condition precedent to formation of a

5   written agreement if the condition does not contradict the express

6   terms of the agreement.  Opp'n at 14, 16 (citing, e.g., Hicks v.

7   Bush, 10 N.Y.2d 488, 491 (N.Y. 1962)).  While this is a true

8   statement of law, it does not save Wailea's claim because, even if

9   the parties orally conditioned the formation of the Swap Agreement

10  on the Senator Fund using the SSC strategy, as Wailea now argues,

11  such a condition would contradict the express provisions of the

12  Swap Agreement.  First, as noted above, the Agreement states that

13  HSBC was not making any representations, oral or written, with

14  respect to the Senator Fund.  Swap Agreement § 12(g) ("Neither

15  [HSBC USA or its affiliates] is making, and has not made, in

16  connection with this Transaction any representation or warranty

17  whatsoever as to the Reference Fund[.]"); id. § 12(d) ("Neither

18  party is relying on any communication (written or oral) from the

19  other party . . . as investment or other advice or as a

20  recommendation to enter into this Transaction[.]").  Addressing

21  claims similar to those advanced by Wailea here, New York's highest

22  court has held that allegations of an oral condition precedent

23  cannot be reconciled with an express disclaimer covering the same

24  subject matter.  See Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 95-

25  96 (N.Y. 1985).

26       Second, pursuant to the terms of the underlying ISDA Master

27  Agreement, Wailea and HSBC agreed that the terms of the Agreement

28  "constitute [the parties'] legal, valid and binding obligations,

**United States District Court**
For the Northern District of California

enforceable in accordance with their respective terms[.]"  ISDA
Master Agreement § 3(a)(v).[11]  An oral condition precedent to
formation such as that alleged by Wailea, which would prevent the
Swap Agreement from becoming the parties' legal and binding
obligation, is expressly contradicted by this language.  See Morgan
Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp., 296 F.
Supp. 2d 206, 220 (S.D.N.Y. 2003) ("It simply defies logic to
contend that a condition precedent, which would be introduced for
the purpose of proving that the Agreement never became a legally
valid and binding document, would not contradict a term, agreed to
by both parties, stating that 'this Agreement is (the signing
party's) legal, valid and binding obligation enforceable against it
in accordance with its terms.'").

Third, this is not a case, like Hicks, where the agreement is
silent as to the subject matter of the alleged condition.  Rather,
the Swap Agreement explicitly mentions the SSC strategy in Annex
II, as discussed above, without using conditional language.  See
Hicks, 10 N.Y.2d at 492 (noting that agreement was silent as to the
subject of the alleged condition precedent); see also Torres v.
D'Alesso, 80 A.D.3d 46, 57 (N.Y. App. Div. 2010) (rejecting alleged
oral condition precedent where condition did not merely deal with a
matter on which the contract was silent).  This fact supports the

---

[11] Section 3(a)(v) of the ISDA Master Agreement provides in full
that each party represents to the other party that: "Its
obligations under this Agreement and any Credit Support Document to
which it is a party constitute its legal, valid and binding
obligations, enforceable in accordance with their respective terms
(subject to the applicable bankruptcy, reorganization, insolvency,
moratorium or similar laws affecting creditors' rights generally
and subject, as to enforceability, to equitable principles of
general application (regardless of whether enforcement is sought in
a proceeding in equity or law))."

inference that, if sophisticated parties such as those in this case desired that formation of the Swap Agreement be conditioned upon Annex II, they would have included conditional language stating that intention.

Wailea again argues that the language in Section 3(a)(v) of the ISDA Master Agreement, stating that the enforceability of the Swap Agreement is "subject . . . to equitable principles of general application," entitles it to the equitable remedy of rescission. Opp'n at 16.  Again, this language does not convert an invalid claim into a meritorious one.

Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiff's fourth claim for failure of condition precedent.

**E.    Claim for Violation of California Corporations Code**

In its fifth claim, Wailea alleges that HSBC USA violated Section 25401 of the California Corporations Code ("Section 25401"), thereby entitling Wailea to rescission of the Swap Agreement under Section 25501 of the Code ("Section 25501"). Compl. ¶¶ 61-64.  Section 25401 provides, in relevant part, that it is unlawful for any person to sell a security by means of a communication involving an "untrue statement of a material fact or [omissions of] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  Section 25501 provides that the purchaser of a security sold in violation of Section 25401 may sue the seller for rescission, unless the seller can prove that it exercised reasonable care and did not have knowledge of the untruth or omission.

Wailea alleges that HSBC made "materially misleading

**United States District Court**
For the Northern District of California

1  statements and omissions" of two types: (1) oral and written

2  representations that the Senator Fund had historically been

3  invested and would be invested pursuant to the SSC strategy; and

4  (2) month-end summary valuations that misstated the net asset value

5  of Wailea's investments.  HSBC USA argues that Wailea's claim fails

6  because it is time-barred, and because Wailea cannot point to any

7  actionable statements or omissions subject to Section 25401.  The

8  Court agrees with the latter argument and therefore need not

9  address the statute of limitations issue.

10  According to the Complaint, HSBC "represented" that the

11  Senator Fund had historically followed an SSC strategy and had not

12  breached HSBC's Investment Guidelines.  Compl. ¶¶ 17, 32, 63(a).

13  HSBC also allegedly failed to disclose material information about

14  BLMIS contained in the 2006 KPMG report.  Id. ¶ 33.  Wailea's

15  Complaint also refers to various representations made by the

16  Senator Fund itself, id. ¶¶ 14-16, 18, and representations in the

17  Month-end Valuation Reports, id. ¶¶ 25, 63(b).  HSBC USA argues

18  that none of these is an actionable representation.  Wailea does

19  not respond to this argument, and the Court agrees with HSBC USA.

20  All of the alleged representations and omissions are either

21  expressly disclaimed in aforementioned provisions of the Swap

22  Agreement or are not cognizable under Section 25401.

23  Wailea expressly agreed that HSBC had not made any

24  representations whatsoever about the Senator Fund, Swap Agreement §

25  12(g); that HSBC was not responsible for any statements made by the

26  Senator Fund, id.; that Wailea had the sole responsibility to

27  investigate the Senator Fund, id. § 12(f); and that HSBC had no

28  obligation to disclose any material information in its possession

**United States District Court**
For the Northern District of California

about the Senator Fund, even if such information was not public and was not known to Wailea, id. § 20(b). This plain language of the disclaimers is clear and precludes Wailea from now alleging that HSBC USA made representations or omissions about the Senator Fund, as that would directly contradict the bargained-for language of the Swap Agreement. See Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1159 (9th Cir. 1996) (holding that investors' contractual representation that they did not rely on any other person in purchasing their investment defeated their securities fraud claim); see also Bank of the West v. Valley Nat'l Bank, 41 F.3d 471, 477-78 (9th Cir. 1994) (holding that the "plain and strong words" of a disclaimer of reliance defeated fraud claim because "the [parties] expressly agreed to a relationship in which each would investigate independently and exercise independent judgment[, and] [t]here was no lack of clarity in the contract, no mutual mistake, no reason to suppose that the parties mutually intended any relationship other than what the contract said.")

The remaining purported actionable representations Wailea alleges -- the statements in the Month-end Valuation Reports -- do not support a claim under Section 25401 because they are not communications made by Wailea in connection with the sale of a security and therefore are not covered by Section 25401.

Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiff's fifth claim for violation of the California Corporations Code.

///

///

///

///

**V.     CONCLUSION**

     For the foregoing reasons, the Court GRANTS the Motion to Dismiss filed by Defendant HSBC Bank USA, N.A., against Plaintiff Wailea Partners, LP.  Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.


     IT IS SO ORDERED.


     Dated: December 15, 2011

                                              _____

                                              UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California